JAMES R. THOMPSON, Respondent, *v.* FREDERICK O. BUR-
HANS et al., Executors, etc., Appellants.

A person, claiming land under a defective conveyance, having entered into actual possession of a part claiming the whole, may have constructive possession of the residue.

This is so, however, only when the part not actually possessed is for use with, or subservient to, that so possessed ; it must have some necessary connection therewith.

In an action of ejectment plaintiff claimed under a void deed from the State comptroller, executed in 1836, purporting to convey, with other lands, the north-west quarter of a certain township containing 6,300 acres. Defendant unlawfully entered into possession of 2,000 acres of the north part of the said quarter. Plaintiff gave evidence to the following effect. He had paid the taxes on the land claiming title thereto, and caused the same to be surveyed. About 1852 he caused some lots to be surveyed in the north-west corner of said quarter, lot one containing 950 acres. In 1856 one R., under an arrangement with plaintiff, cut from this lot a quantity of logs, paying plaintiff therefor. In 1864 plaintiff hearing that defendants intended to enter upon the land, arranged with R. to go upon it, cut some logs, and build a shanty for the purpose of thus gaining possession. R. that winter went upon said lot one, cut logs and built a shanty without a roof, cutting over less than a quarter of an acre, and remaining thereon about three weeks ; in the summer of 1865 R. put a roof on the shanty, and built a barn. In the winter of 1865–1866 after the commencement of the action R. went upon the said lot under plaintiff, cut roads and cut a large quantity of logs. *Held*, that plaintiff did not show such possession as enti-

tled him to recover for anything more, at most, than the small piece of cleared land upon which was the shanty and barn.

*Jackson* v. *Lunn* (3 John. Cas., 109), distinguished.

*Woods* v. *Banks* (14 N. H., 101), disapproved.

*Thompson* v. *Burhans* (15 Hun, 580), reversed.

(Argued November 12, 1879; decided December 2, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 15 Hun, 580; reported on former appeal, 61 N. Y., 52.)

The nature of the action and the facts appear in the opinion.

*S. Brown,* for appellants. In ejectment, the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of defendant's. (Adams on Ejectment, 319; 2 Greenleaf's Ev., § 303; *Bloom* v. *Burdick,* 1 Hill, 130; 61 N. Y., 52.) If the acts of plaintiff can enure to his benefit in any respect, they certainly cannot to give him constructive possession of the whole of the north-west quarter of forty-seven. (61 N. Y., 68–69. *Monroe* v. *Merchant,* 28 id., 9.) The transactions testified to fall short of showing any right of recovery on the ground of prior possession. (*Miller* v. *L. I. R. R. Co.,* 71 N. Y., 380; *Lane* v. *Gould,* 10 Barb., 254; *Wheeler* v. *Spinola,* 54 N. Y., 377; *East Hampton* v. *Kirke,* 6 Hun, 257; *Miller* v. *Downing,* 54 id., 631; *Doolittle* v. *Tice,* 41 Barb., 181; *McFarland* v. *Kerr,* 10 Bosw., 249; *Jackson* v. *Harder,* 4 J. R., 202;. *LaFrambois* v. *Jackson,* 8 Cow., 603; *Sharp* v. *Brandon,* 15 Wend., 597; *Jackson* v. *Schoonmaker,* 2 J. R., 234; *Monro* v. *Merchant,* 28 N. Y., 9; 61 id., 52.) The fact that the claimants of this land under the tax deed caused some surveying to be done upon this land, and paid some taxes thereon, does not help the plaintiff. Such acts have never been held to show a possession for any purpose. (61 N. Y., 70; 71

id., 384–385.)   Unless the claimant shows a regular chain of paper title from the source thereof, he must show an actual possession to lay any foundation for a right *prima facie* to recover.   (*Gardner* v. *Hart*, 1 N. Y., 528.)   Plaintiff is concluded by his admission from claiming he has had any prior possession of the premises.   (1 Greenleaf's Ev., §§ 27, 186.) The patent to Lawrence only can be looked to for the purpose of ascertaining what it conveyed.   The entire instrument should be construed, and every part of it, if possible, be made to take effect.   (2 Blk. Com. [Wend. ed.], 397; *Webster* v. *Atkinson*, 4 N. H., 21; *Waugh* v. *Waugh*, 28 N. Y., 94; *Washington* v. *Hyler*, 4 Mass., 196; 6 Cow. R. [3d ed.], note, p. 721.)

*A Pond*, for respondent.   Plaintiff was in the actual possession of the premises in question at the time the defendant entered upon them, and such possession was sufficient against a trespasser.   (*Wood* v. *Banks*, 14 N. H., 102; 1 Hill on Real Prop. [4th ed.], 74, § 27; *Asher* v. *Whitlock* [Q. B.], 1 L. R., 1; *Miller* v. *Ball*, 64 N. Y., 292; *Johnson* v. *Elwood*, 53 id., 434; *Hopkins* v. *Mason*, 61 Barb., 469.) It having been established that the plaintiff had taken possession of the premises in question under his deeds before the entry of the defendants thereon, and that the claim of title of the defendants thereto was invalid as against the plaintiff, the latter is entitled to maintain this action of ejectment against the defendants to recover the possession. (*Jackson* v. *Hazen*, 2 J. R., 22; *Jackson* v. *Harder*, 4 id., 202; *Pierce* v. *Hall*, 41 Barb., 142; *Hill* v. *Draper*, 10 id., 455, 458; *Hopkins* v. *Mason*, 61 id., 469; *Jackson* v. *Dennis*, 5 Cow., 200; *Wood* v. *Banks*, 14 N. H., 102; 1 Hill on Real Prop. [4th ed ], 74, § 27; 61 N. Y., 68.)   The Code, under which this action was brought, allowed a " person" to be made a defendant who has or claims an interest adverse to the plaintiff.   (Old Code, § 118.)   This section applies to the action of ejectment.   (*Becker* v. *Howard*, 47 How., 423; *Fosgate* v. *Her. Man. Co.*, 2 Kern.,

580, 583; *Abeel* v. *Van Gelder*, 36 N. Y., 513, 514; *Lucas* v. *Johnson*, 8 Barb., 244; *Carter* v. *Hunter*, 40 id., 89, 93.)

EARL, J. This was an action of ejectment brought to recover an undivided five-sixteenth part of 4,000 acres of land described in the complaint as situated in the town of Newcomb, Essex county, in township number forty-seven, in Totten & Crossfield's purchase. The only title claimed by the plaintiff is under a tax deed from the comptroller of the State executed in 1836. It was held by the Commission of Appeals, upon a prior appeal in this case (61 N. Y., 52), that that title was, on account of certain defects in the proceedings prior to the execution of the deed by the comptroller, invalid, and hence the plaintiff cannot recover upon the strength of any title to the land claimed

The defendants claim the same land under a patent from the State of a gore of land lying between Totten & Crossfield's purchase and McComb's purchase. The claim of the plaintiff is that the south line of McComb's purchase is the north line of Totten & Crossfield's purchase, and that there is no gore there. The claim of the defendant is that there is a gore there, and that the land claimed is in such gore north of township forty-seven and between that and McComb's purchase.

The defendants claim no other title than the patent from the State, and their title depends entirely upon the existence of the gore. Most of the evidence at the trial was directed to the question of the gore, and after a studious effort to comprehend the full force of the evidence given, I am of opinion that it presented a question of fact for the determination of the court at Special Term, and that its finding, like that of the referee, upon substantially the same evidence upon the former trial against the existence of the gore, is conclusive upon us.

We have, therefore, to deal with a case where neither party has any title to the land in controversy. The complaint alleges that the defendants are in possession of the

lands, and that they withhold the possession from the plain-
tiff; and the defendants in their answer admit that they are
in possession, but claim that the land thus possessed, instead
of being in township forty-seven is in the gore north of the
township. For the purposes of this action, therefore, it
must be taken as a fact that the defendants were at and
prior to the commencement of this action in the possession
of the land claimed. The plaintiff, therefore, in order to
succeed in his action and deprive the defendants of their
possession, having no title to the land, must show a prior
possession of the land which was wrongfully invaded by the
defendants. Prior possession is sufficient to sustain a re-
covery in ejectment against a person who intrudes upon
that possession without any right.

The comptroller's tax deed in form conveyed the north-
west, the north-east, and the south-east quarters of the town-
ship, each quarter containing 6,300 acres of land. The
lands claimed are 4,000 acres across the northerly ends of the
north-west and north-east quarters. Upon the other trial it
did not appear that the plaintiff had ever been in the actual
possession of either of those two quarters; but it was admit-
ted at that trial "that the north half of township forty-seven
is wild and in a state of nature and covered with timber, and
was never any of it cleared up or cultivated." So far as the
plaintiff sought, upon the prior appeal, to sustain his recovery
upon prior possession, it was upon a possession of a small
portion of the south-east quarter, and for reasons stated in
the opinions pronounced in the Commission of Appeals, that
possession was held insufficient. It was not then held, as has
been erroneously supposed, that that possession was sufficient
to give constructive possession of the whole of the south-east
quarter. It was simply held that it was not sufficient, with
the deeds under which plaintiff claimed, to give constructive
possession of the land in controversy.

Upon the last trial, besides the proof of payment of taxes,
claim of title and surveys given upon the former trial, the plain-
tiff gave further proof of acts done upon the north-west quarter

of the township, as follows : In 1852 or 1853, the plaintiff caused some lots to be surveyed in the north-west corner of the north-west quarter of the township. The first lot on the westerly side of the quarter, as thus surveyed, contained 940 acres. In 1858, one Ralph, by arrangement with the plaintiff, cut from this lot from 500 to 1,000 pine logs and paid him for them. Nothing more was done upon the lot until December, 1864. Then the plaintiff, hearing that the defendants meant to enter upon the land under their claim, made an arrangement with Ralph, whereby he was to go upon the land and cut some logs there and build a shanty, for the purpose of thus gaining possession of the land. The avowed intention of the plaintiff was to have just enough done to get the possession. That winter accordingly Ralph went upon that portion of the north-west quarter called lot number one and cut logs for a shanty, and constructed one without any roof. He cut over less than a quarter of an acre that winter, and was there in all not over three or four weeks. During the summer of 1865, a roof was put upon the shanty by Ralph and a barn was built. This was all that was done upon the lot, as I understand the evidence, before the commencement of the suit. After the suit was commenced in the winter of 1865–1866, Ralph again went upon the lot under the plaintiff, and cut out some roads and cut between 3,000 and 4,000 logs.

Upon these acts of possession the court at Special Term gave plaintiff judgment for five-sixteenths of 2,000 acres, being so much of the land claimed as was in the north-west quarter of the township. The land thus recovered is a strip across that quarter, nearly one mile wide and nearly three and one-half miles long. The main question now to be determined is whether the plaintiff showed such possession as entitled him to this recovery. I think he did not.

That there was any actual possession of the land recovered cannot be well claimed. It was not inclosed. No part of it had ever been cultivated or improved. Whatever was done upon it was to take value from it, not to put value into it. It does not even appear that any one ever lived in the

shanty, and no one representing the plaintiff was upon the land at the time of the alleged entry of the defendants or for some months before. Payment of taxes, surveying and assertion of right, do not constitute possession. They merely show a claim of title, and whenever it is important to show that, they are material. Going upon land from time to time and cutting logs thereon, does not give possession. Such acts are merely trespasses upon the land against the true owner, whoever he may be. Any other intruder may commit similar trespasses, without liability to any other trespasser. Such acts do not constitute a disseizin of the true owner. One may gain actual possession of land by fencing it, or by cultivating and improving it or by building upon it; and then he will have possession of as much as he has fenced, or cultivated and improved, or built upon with some land around and necessary for the buildings. Actual possession, —*possessio pedis*— can mean no more. So in the early stages of society, before there was any exclusive appropriation of lands, the shepherd had the possession of the lands upon which he was feeding his flocks, and the farmer of the lands which he inclosed or tilled. But it was never supposed that the hunter had possession of the forest through which he roamed in pursuit of game; and no more can a wood-chopper be said to possess the woods into which he enters to cut logs. The logs which he cuts are his against a mere intruder; and he may enter as against such one and remove them. But he has no standing which will prevent others from performing the same acts. The plaintiff, at most had actual possession of the shanty and the barn and the land cleared about them for use with them.

Nor did the plaintiff have any constructive possession of the land. Constructive possession is based upon a written title, which may be valid or invalid. The person having the valid title is always in law in the constructive possession of the land, unless he has become disseized. But a person claiming land under a defective conveyance must have actual possession of part of the land, and that gives constructive

possession of other land contained in the conveyance. In other words, he must have a written conveyance of land, and he must enter into actual possession of a part thereof, claiming the whole, and then he may, under certain circumstances, have constructive possession of the whole. Constructive possession arises in no other way than this. But the definition I have given is not yet complete. The part not actually possessed must be for use with or subservient to that actually possessed, and have some necessary connection therewith. One may purchase and take a conveyance of land for a farm and have actual possession of but a small part thereof, and the balance, uninclosed, may be kept for future improvement, and for fire-wood and fencing and building timber, and he will have constructive possession of such uninclosed land. But such constructive possession will extend only to such land as is used in connection with the improved land actually possessed, and to only so much as is reasonable and proper for that purpose, according to the custom of the country. If these defendants had built upon these lands a saw-mill and used the balance of them suitable in quantity to supply it with logs, or if they had opened a mine upon them and used the timber upon the balance for fire-wood in smelting and separating the ore, or if these lands had been suitable for pasturage, and the defendants had built a house and barns upon them and used them for herding large droves of cattle, like the ranchmen of Texas, California and some other States, there would have been room for the application of the doctrine of constructive possession. This doctrine is quite fully discussed in the opinions delivered upon the prior appeal in this case and in the more recent case of *Miller* v. *Long Island R. R. Co.* (71 N. Y., 380), and needs no further elaboration now. (See also *Wheeler* v. *Spinola*, 54 N. Y., 377; *Miller* v. *Downing*, id., 631.) Here there was no attempt or intent to improve any portion of the land claimed. No part of it was inclosed or possessed for the purposes of a farm. The shanty and barn seem not to have been erected for perma-

nent use, and this large tract of land was not intended for use as one farm or in any way in subserviency with that actually possessed. Hence, within any authority that can be found in this State, there was no constructive possession of any part of this land.

The case mainly relied upon by plaintiff's counsel is that of *Jackson* v. *Lunn* (3 Johns. Cas., 109). But that case is not an authority upon the question involved here. That case determined what acts of ownership and possession of lands would furnish presumptive evidence of title sufficient to maintain an action of ejectment. But it did not deal with the case of one who confessedly had no title, but relied in an action of ejectment solely upon prior possession. In *Woods* v. *Banks* (14 N. H., 101), it was held that an entry upon a lot, with a view of taking possession of it under a claim of title and marking the lines of it by spotting the trees around it, is a sufficient possession of it against one who can show no right to enter upon the land, to sustain an action of trover for timber cut and taken from the lot. It is sufficient to say of that case that it is sustained by neither principle nor any authority to be found in this State. Can one mark the trees around one thousand or fifty thousand acres of forest land and thus gain a possession which will shut out all the rest of the world but the true owner? If the land were derelict, without an owner, according to the philosophic writers on the origin of society and of property, such acts would not give such possession as would exclude others. Passing around land or over it, asserting title ever so loudly does not give possession.

The evidence, therefore, warranted a recovery by the plaintiff at most of nothing but the small quantity of land occupied by the barn and shanty and the cleared land about them.

Our attention has been called to many exceptions to the rulings of the learned judge at Special Term upon questions of evidence. Those exceptions were before the Commission of Appeals, and it was not deemed important to consider them

at that time; and we do not deem it important now to consider them, as their final determination may never be necessary.

The judgment must be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.