Haight, J.
This action was originally brought in justice court to recover damages for a trespass upon the plaintiff’s close. The defendant having entered a plea of title,, the action was discontinued and recommenced in this court. The plaintiff appears to have been the owner and occupant of a farm situate in Cato, Cayuga county, upon which he resided; that adjoining his farm was a quantity of marsh lands surrounding Otto lake; that he dug, or caused to be dug, some ditches through the marsh lands, cut some of the brush, and constructed a fence thereon from which he claims to have inclosed and obtained the exclusive possession of the lands upon which the alleged trespass was committed. Upon the first trial of the action a nonsuit was ordered,_ and this court, on review, granted a new trial, then being of the opinion that the evidence was sufficient *222 to carry the question to the jury. Upon a retrial the defendant put in his evidence, and at the conclusion the court directed the jury to render a verdict in favor of the defendant upon the ground that he had shown title to the locus in quo.
, The only question which we feel called upon to discuss upon this motion pertains to the defendant’s title. It appears from the evidence that on the 1st day of April, 1795, Henry J. Van Eensselaer and wife executed and delivered a deed to Samuel Forbes, which deed is recorded in Book O. G-., page 223, May 24, 1797, and purports to convey an undivided half of lot No. 10, in the town of Brutus. It further appears that the name of the town of Brutus has since been changed to Cato, and that the lands in question were a part of lot No. 10; that Samuel Forbes executed and delivered a deed to Thomas White, which deed was recorded in Book O. D., page 398, February 20, 1796, purporting to convey the whole of lot No. 10; that on the 24th day of October, 1818, a deed of said lot, executed by Thomas White and Ann Darrah, was executed and delivered to John Myrick, as appears from the records, the grantors in which instrument were described as “Thomas B. Wright, of the city and county of New York, and Ann, his sister, heirs-at-law of Thomas Wright and Thomas F. Wyght, deceased.” It is contended on the park of the plaintiff that this deed is defective, for the reason that it does not appear to have been executed by the grantors named in the body of the instrument; that it is signed by “Thomas White and Ann Darrah,” whilst the grantors, as recited in the body of the instrument, are “Thomas B. Wright and Ann, his sister;” whilst on the part of the defendant it is claimed that the difference in the spelling of the name was but a clerical error, and that that is evident from the fact that the conveyance from Forbes was to Thomas White, and that either the Thomas Wright or Thomas F. Wyght mentioned in the body of the instrument as the parties deceased, was the Thomas White to whom Forbes had conveyed the title.
It will be observed that the deed was dated on the 24th of October, 1818. None of the witnesses sworn upon the trial have given any evidence tending to show an acquaintance with these parties. It is an ancient deed, and we are inclined to the opinion that the variance in the spelling of the names was either the fault of the scrivener or resulted from the change in the spelling of the name, which was somewhat common to families at that period. But m view of what follows it may not be material, for no possession of the lands in question is shown down to this time. It further appears from an exemplified copy of the will of John *223 Myrick, dated June 28, 1832, proved September 15, 1831, that he gave and bequeathed unto Henry Sheldon, the husband of his deceased daughter Sarah, “the use and occupancy of the farm land situate in 0ato, Cayuga county, as the same has been and now is used by the said Henry, until the lawful age of the youngest child of the said Sarah; then the said lands and premises to be equally divided between the said children of my deceased daughter, excepting one-fourth part thereof to the said Henry Sheldon during his HcLÍjTH>ci»l lifo ^
And that on the 17th day of March, 1866; Sarah C. Hulett executed and delivered to John S. Oglesbie a deed, recorded in Book 113, page 312, which purported to convey a part of the same lands, bounded on the east by the lands •of William E. Sturgis, and south by the lands of William Burk and John Quinn, etc., describing the lands in question. That on the 22d day of May, 1882, Oglesbie executed and delivered to the defendant a deed of an undivided one-half of the lands in question, which deed was recorded in Book 100, at page 517. It further appears from the evidence that Sarah C. Hulett, the grantor named in the Oglesbie deed, was the daughter of Sarah Sheldon, the wife of Henry Sheldon, the daughter of John Myrick, so that she appears to have been an heir-at-law of Sarah Sheldon, and one entitled to the remainder under the will of John Myrick after the life estate of her father, Henry Sheldon, had terminated. Evidence was given on behalf of the defendant by Amon Langworthy and William D. Sturgis, tending to show that they were acquainted with Henry Sheldon, in his lifetime ; that he lived on the farm located upon lot No. 10 ; that part of the farm was upland on which he lived, and that it extended down and across the marsh, covering the lands in question ; that he continued to live upon the premises until he died, and that after liis death his son-in-law, Charles Hulett, the husband of Sarah 0. Hulett, occupied the premises ; that Sheldon made use of the marsh lands in some measure for pasturage for his cattle up to the time that he died, and that afterwards it was occupied by Hulett in the same way.
It is not claimed on the part of the plaintiff that he had any right or license to occupy the lands in question. They were simply waste lands abutting upon his own farm, and he saw fit to occupy them in the maimer appearing in the testimony. The defendant’s record title, as we have seen, extends back to the Van Rensselaer deed in 1795, with the exception of the defect, which we have already mentioned, appearing in the White deed. The rule required the defendant to show title from the original source, or from some one *224 proved to be the owner or in the possession of the premises, claiming title thereto.
In the case of Thompson v. Burhans (79 N. Y., 93), it-was held that a person claiming land mider a defective conveyance, having entered into actual possession of a part, claiming the whole, may have constructive possession of th.6 T@Sl0.U6
In the case of Miller v. The L. I. R. R. Co. (71 N. Y., 380), it is held that possession, unaccompanied by paper title requisite to furnish the presumption of ownership sufficient to maintain an action for injury to the freehold, must be actual. That in case of land unoccupied, unimproved and unenclosed, such possession may be made out by showing that the lot is kept as a wood lot for an improved farm, and that the owner of the farm has habitually cut firewood therefrom.
As we have seen, Henry Sheldon was in possession of the farm, a portion of which extended down and across the low swamp lands in controversy. That these lands were a. part of his farm, abutting upon the highlands on which he lived and occupied as a farm. That these lands were to some extent used by him for the pasturing of his cattle during the dry seasons of the summer. The possession of Sheldon to the highlands was actual and unquestioned. The swamp land abutted upon the highlands, and was. within the description of the Myrick deed. His cattle, from time to time, pastured from the highlands on to the swamp lands. He consequently would appear to have been in the constructive possession of the swamp lands under such circumstances as would raise a presumption of ownership. We have consequently reached the conclusion that the defendant was the legal owner of an undivided half of' the lands in questions.
Upon the trial Oglesbie was examined as a witness on the part of the defendant. As we have seen, he took title from Mrs. Hulett. Upon his direct examination he was asked as to what Mrs. Hulett said at the time he made the purchase, in relation to what she claimed to own, and what she said in relation to her possession. This evidence was objected to, the objection overruled, and exception taken. The evidence was doubtless offered for the purpose of showing that she claimed to be in possession and the owner of the premises, under the rule as laid down in the cases of Abeel v. Gelder (36 N. Y., 513); Swettenham v. Leary (18 Hun, 284); Smith v. McNamara (4 Lansing, 169). But the answers given to the questions objected to were not material and could not affect the result.
The motion for a new trial should be denied, and judg *225 ment ordered for the defendant upon the verdict. So ordered.
Smith, P. J., Barker and Bradley, JJ., concur.