(74 Misc. Rep. 610.)

PEOPLE v. SANTA CLARA LUMBER CO.

SAME v. OSTRANDER (two cases).

(Supreme Court, Special Term, Essex County. December, 1911.)

PUBLIC LANDS (§ 163*)—GRANTS—BOUNDARIES.

   Under a patent granted in 1792 by the state to one Lawrence of township 47 in the purchase of Totten & Crossfield in 1772, the state granted lands extending to the McComb purchase, and the north boundary of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

township 47 is the line surveyed by Campbell, Mitchell, and Wright, which is coincident with the county line established in 1903 and 1904 between the counties of Franklin and Essex.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 460–465; Dec. Dig. § 163.*]

Actions by the People against the Santa Clara Lumber Company and against George N. Ostrander, to recover possession of realty. Actions consolidated. Judgment for defendants.

See, also, 143 App. Div. 974, 128 N. Y. Supp. 1138.

George P. Decker, Deputy Atty. Gen. (John H. Burke and Benj. McClung, of counsel), for the People.

Frank L. Hall (Ernest P. Hoes, of counsel), for defendant Santa Clara Lumber Company.

Edward M. Angell, for defendant Ostrander.

VAN KIRK, J. These three actions are tried as one; it being stipulated by the attorneys that the question of title should be now tried and determined, and, if the plaintiff is entitled to recover, the amount of the recovery should be determined later. The premises in question involve what is called a "gore," lying north of township 47 in Totten & Crossfield's Purchase, Essex county, N. Y. This so-called gore lies between a line surveyed by Brodhead in 1797 and a line surveyed by Campbell, Mitchell, and Wright, which latter line is coincident with the county line as established in 1903 and 1904 between the counties of Franklin and Essex. It is a strip of land about one-half mile wide, containing some 2,000 acres of land. The plaintiff claims title to this land, based upon the claim that the so-called gore has never been conveyed by the state and that it still remains as state lands. If it has been conveyed by the state, then concededly the state has no title and could not recover, whether or not the defendants have title. The gore, as is claimed by the state and as I find, is included within the limits of that tract of land known as Totten & Crossfield's Purchase. Opposite township 47 of Totten & Crossfield's Purchase or opposite this gore and next northerly of it are Great Tracts 1 and 2 of the McComb Purchase, which tracts were patented to one McCormick in 1798.

The history of Totten & Crossfield's Purchase, briefly stated, is as follows: In 1771 and 1772, Totten and Crossfield, with others (the name of the purchase being had from the first two names among the applicants for the lands), desired to purchase a quantity of land in what is now Essex county. This land was occupied by the Indians; and, under the British rule, while the Crown claimed the title to the lands, it took the position that the Indians were entitled to compensation if they released their rights of occupancy, etc. Ebenezer Jessup became the real owner and had a survey of this tract of land made in 1772 by Campbell. The northwest corner of the tract was and is fixed, and there is no dispute in this case about its location. Campbell began at this northwest corner, in running the north line of the tract, and ran easterly, in company with a number of the Indians representing the Indian tribe which was occupying the land, until they came to a high

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hill or mountain, at which point they stopped. Campbell then pointed easterly and stated to the Indians that the line would run easterly towards Lake Champlain in the course in which the line had already been run from the northwest corner to said hill. The Indians assented to this, and thus the line was located. After Jessup had had surveyed the outlines of the Totten & Crossfield's Purchase, so called, he made a map showing its outlines and the division of the purchase into townships, which map was filed in the office of the Secretary of State in volume 59 of Land Papers, at page 41, in or about 1772, and which map is defendant's Exhibit No. 11. The Crown required that, in the conveyance of such lands, the Indians should convey or release to the Crown, and that the patent of the land should go from the Crown. This conveyance or release was executed and delivered to George III, in 1772, and the consideration therefor paid to the Indians; but, before a patent had been issued to the applicants, the Revolutionary War was fought and terminated. All title held by the British Crown then went to the people of the state of New York.

The evidence contains records of proceedings of commissioners of the land office with reference to the disposal of the several townships contained in Totten & Crossfield's Purchase, which purchase was never patented by the state as a whole; but many patents have been issued by the state of separate townships. The records of the meetings of the commissioners of the land office cover the years 1785 to 1792. In these records appear references to township 47, which is bounded upon the north by the north line of the Totten & Crossfield's Purchase and in one of which records, Book 59, p. 113, it is stated by Watson that he has "paid the state the purchase money in full" for township 47. The township is so bounded on the north in several references made to it, and I think uniformly, until the warrant for the survey by the Surveyor General. There are no field notes showing a survey upon the ground of township 47, though as far back as 1772 and 1773 field notes of surveys of adjoining townships show the location of the black birch tree, which is recognized by the parties in these actions as the southwest corner of township 47. When the Surveyor General made the return to the warrant, he described the township as No. 47. He ran the courses as the needle pointed in 1772 and ran the courses which were right for the several sides of township 47, and the distances upon the northwesterly and southwesterly sides of the township are substantially correct. It is evident that he never made a survey of the township and never had one made. It was the general plan that the purchase should be divided into townships of about 24,000 acres each, or about six miles square. Township 47 is so situated that, when 24,000 acres are allotted to it, above the line which is fixed by the black birch tree in the southwest corner, and the course on the southerly township line is run therefrom, if laid in the form of a rectangle, a triangle would be left between the northerly line of township 47 and the north line of Totten & Crossfield's Purchase. When the warrant was returned, the Surveyor General apparently computed the length of the side lines so that, together with the other two lines of the tract, these lines would inclose 24,000 acres in the township, and returned his warrant, showing that the northeasterly boundary or side of the town-

ship is 386 chains and 40 links in length and the southwesterly boundary or side 663 chains and 60 links in length.

The counsel for the state urges that this discloses an intent upon the part of the state to convey less than the township as set forth upon the Jessup map, and he urges that the intent to make each township cover about 24,000 acres supports this claim. Giving the northeasterly and southwesterly sides of township 47 the length set forth by the·Surveyor General in his return to the warrant, township 47 would not extend to the north line of Totten & Crossfield's Purchase, nor would it extend to the southerly side of the gore in question here. I have concluded that, when the Surveyor General made his return upon which the patent was issued, he made no survey of the premises, nor had one made, nor had any ever been made of township 47, but that he calculated the length of the sides that would include 24,000 acres, giving the northerly and southerly ends of the township the proper lengths, and that it was his intent to describe township 47, and that the patent which conveyed township 47 intended to convey that township as it was laid out on the said Jessup map and had been uniformly before described, even though the lengths of the side lines as stated in the description fell short of reaching the northerly side of Totten & Crossfield's Purchase. It seems to me that the grant of township 47 was the grant of a then known piece of land as marked out on this map.

Though the Crown required that the legal title to these lands should come from it, it was known and understood that, upon purchase from the Indians, the Crown would issue the patent without further compensation; so that those who purchased from the Indians held the equitable title to the lands and were entitled to a conveyance from the Crown. When the state of New York received the title, after the Revolution, it received the same kind of title which the Crown held, and subject to the same equitable rights of those who had purchased from the Indians. Ebenezer Jessup had become the real or representative owner of the Totten & Crossfield's Purchase, and in 1776 he executed to Jacob Watson a deed conveying the equitable title of said township 47. Watson assigned his right and title to Effingham Lawrence, who thereupon became entitled to a patent from the state of said township 47, which was the township "known and distinguished by number 47 on the general map of the Indian Purchase, lying six miles east of· the township of Markham and adjoining numbers 28 and 46." The recitals in the deed from Ebenezer Jessup to Jacob Watson, dated January 29, 1776, and filed in the office of the Secretary of State, which recitals being in an ancient document are presumptive evidence of the facts, are interesting and significant, as follows:

"Whereas, Joseph Totten and Stephen Crossfield and others lately petitioned the Governor and Council of the Province of New York for license to purchase of the native Indians, proprietors thereof, a large tract of land lying above and beyond the patent of, Kagaderossereass on the banks of the Hudson river in the said province, which said license and purchase was accordingly advised to be granted and made, and which purchase was perfected and made in the presence of his excellency Governor Tryon and the Hon. Sir William Johnson, Bart., Superintendent of Indian Affairs, by the said Ebenezer Jessup in behalf, and at the expense, of the said Joseph Totten and Stephen Crossfield and their associates; previous to which the said Joseph Totten and Stephen Crossfield vested the said Ebenezer ·Jessup with full·

power to dispose of the location and interest any number of persons in the same, in order to obtain his majesty's letters patent for such parts as upon survey should be found fit for cultivation and capable of improvement; and, whereas, the said Ebenezer Jessup hath caused the said large tract *mostly* to be surveyed into townships or lots of 24,000 acres of land each and the usual allowance for highways, adjoining to which is one township or lot *containing 25,000 acres* of land and the allowance, etc., known and distinguished by number forty-seven on the general map of the said Indian Purchase lying six miles east of the township of Markham and joining numbers twenty-eight and forty-six, bounded as follows, viz.: Beginning at a black birch tree standing at the southwesterly corner of the lot or township number forty-seven, being the southeasterly corner of number twenty-eight, the northeasterly corner of number twenty-seven, and the northwesterly corner of lot number forty-six, and which said birch tree is properly marked for the said corners, etc., from thence running north 30° west, along the easterly side of number twenty-eight to the northeasterly corner thereof, and from thence continuing the same course north 30° west, about three miles *to the north line of the said purchase*, from thence east along the said north line six miles and 50 chains, then south 30° west to the northeast corner of township or lot number forty-six, and from thence south 60° west six miles to the place of beginning, *containing* 25,000 acres of land and the usual allowance for highways."

This description plainly marks the north line of township 47 as set forth on the map, as the north line of the said Totten & Crossfield's Purchase. This title conveyed to Watson having been assigned to Effingham Lawrence, and the patent having been issued to him by the state of township 47, it can hardly be said that the state intended to convey only a part of said township 47 as described on said map. And it is interesting here to recall the fact again that the title in the state to said Totten & Crossfield's Purchase was a title subject to the equitable rights of those who had acquired said Totten & Crossfield's Purchase from the Indians and paid therefor. The state would have no equitable right to retain any portion of said purchase; and yet, if its patent to Effingham Lawrence did not include the entire township, it would be retaining inequitably a portion of the said original purchase. The state held the same bare legal title to the lands within said purchase that a landholder has who has given a contract to convey to another a certain piece of land owned by him, upon certain payments being made, after said payments have been actually made in full according to the terms of said contract.

This conclusion is upheld in the fact that at no time until very recently have the people claimed to own any part of this township or any piece of land northerly of the township and southerly of the north line of Totten & Crossfield's Purchase. The people, through act of the Legislature, have paid a claim made for the cutting of timber upon this gore at the time the county line was fixed between Franklin and Essex counties in 1903 and 1904, and it executed a quitclaim deed of the Morse gore, so called, which lies adjoining the gore in question on the south, and in the conveyance disclaimed any responsibility for the title. When the county line was fixed between Franklin and Essex counties in 1903, monuments were placed by the state or its representatives along this line, four to the mile, on which was marked on the southerly side thereof, township 47, Totten & Crossfield's Purchase. The state had frequently issued maps in which it had marked lands claimed by the state; and, until the map of 1909, the gore in question was not marked as state lands. These acts are referred to as evidence that, at

all times since the patent to Effingham Lawrence of township 47 by the state in 1792, it has apparently been understood by the state and its representatives that township 47 included all the lands to the north line of Totten & Crossfield's Purchase within the side limits of said township. If I am correct in my conclusion, it disposes of the entire case; because, if the state then conveyed this township to Lawrence, it never has reacquired the title, and therefore cannot maintain these actions. It is not necessary, therefore, to pass upon defendant's claim of title. The state fails in these actions because it has no title to the gore in question.

There is a vast amount of evidence in the case bearing more or less directly upon the title to township 47, but no evidence which seriously conflicts with the above conclusion. It is true that there have been some conveyances by those who have later claimed to own the gore and some papers filed by which they seem to concede that they are not the owners north of the Brodhead line; but those concessions are concessions made in comparatively recent years and have no effect whatever to contradict the conclusion that I have reached relative to the patent by the state in 1792 to Effingham Lawrence. I think that the evidence generally in the case, so far as it bears upon the question at all, confirms the conclusion which I have reached.

It is interesting to note the result of the action of Thompson v. Burhans, 61 N. Y. 52. Burhans had received a quitclaim deed from the state of what in this case is known as the Morse gore, and Thompson claimed said gore under a tax deed, and in this action it was found that there was no gore between township 47 of the Totten & Crossfield's Purchase and the north line of said purchase. The state, of course, was not a party to that suit; but the patent to Effingham Lawrence by the state in 1792 was in the case, and the Court of Appeals concluded that neither Thompson, who claimed under a tax deed, nor Burhans, who claimed under a quitclaim deed from the state, had any title to any of the lands north of, or in the northerly part of, township 47, in Totten & Crossfield's Purchase.

It also appears in the evidence that, in 1905, a certificate of the same part of township 47, bounded on the north by Franklin county, under a tax sale of said township, was issued to the McIntyre Iron Company and Finch; and on June 16, 1908, in pursuance of said certificate, a deed was executed by the Comptroller to the said parties. These actions were not begun until June or July, 1910, two years or more after the said deed was delivered by the Comptroller. At the time this certificate and deed were executed and delivered, the boundary line between Essex county and Franklin county had been fixed as identical with the north line of Totten & Crossfield's Purchase; so that, when the Comptroller conveyed by his tax deed the lands bounded on the north by Franklin county, he conveyed all the lands in question in this action.

The defendants, respectively, are entitled to judgment dismissing the complaint, with costs.

A decision may be prepared accordingly.

Judgment for defendants.