A. AUGUSTUS Low, Respondent, *v.* J. WATSON WEBB et al., Respondents, and THE PEOPLE OF THE STATE OF NEW YORK, Defendant-Appellant.

Third Department, June 3, 1944.

*Nathaniel L. Goldstein, Attorney-General (Archie C. Taylor* of counsel), for appellant.

*Cross and Foley,* attorneys *(J. Theodore Cross* of counsel), for respondents A. Augustus Low and Vahdah Gara Low.

*Curtis & Belknap,* attorneys for respondent J. Watson Webb.

SCHENCK, J. In this action for partition of forest lands, the plaintiff-respondent alleges that he and the respondent J. Watson Webb are the sole owners of the lands in question. The People of the State of New York, claiming an interest in said lands, have been made parties defendant. The action was tried without a jury and the court found that the State had no title to the lands in controversy and directed judgment of partition between the plaintiff, as owner of an undivided one-sixth interest, and the defendant Webb, as owner of a five-sixths interest therein.

Totten and Crossfield's Purchase (known also as Jessup's Purchase), of which the parcel of land in dispute is a part, consisted of an area of some 800,000 acres lying within the counties of Essex, Hamilton, Herkimer and Warren. It was purchased from the Indians in 1772 in the name of King George III of England by Joseph Totten and Stephen Cross-

field and their associates. Before a deed could be obtained it was required that a survey be made in order that the Indians might be shown the lands they were to convey. In 1772, Archibald Campbell made up a survey party, which included one Adonizah Stanborough, sometimes referred to as Starborough, and proceeded to lay out the boundaries of this extensive patent upon the ground. Accompanying the survey party were a number of Indians representing the proposed grantors of the Indian deed. Commencing near the southeasterly portion of the purchase, Campbell ran a line westerly to the proposed southwest corner of the tract and then proceeded northwesterly to a point which marked the northwest corner of the Purchase. Campbell was required to locate this northwesterly corner of the Purchase at a point due west from a point ten miles north of Crown Point on the westerly shore of Lake Champlain. This northwesterly corner of the Purchase, as established by Campbell in 1772, has seemingly never been questioned and is important from the standpoint of determining the northerly line of the Purchase. From this northwesterly point Campbell ran the northerly line to the east for a distance of some twenty-seven miles. He did not continue the survey but pointed out to the Indians where the line would continue to the east and his survey notes indicate that the Indians were satisfied. Later, the Campbell line was extended to the east by other surveyors. Campbell then proceeded to divide the Purchase into townships and directed Stanborough to lay out Township 38. Following such directions, Stanborough located the northeasterly corner of Township 38 at a point in Campbell's north line of the Purchase in a lake. This lake is known as Mud Lake and is shown on the survey made by Ebenezer Jessup in 1772, which places the northeast corner of Township 38 in the lake where it is crossed by Campbell's north line.

Jessup in his survey marked a 55-mile line of mile trees from the southerly to the northerly boundary of the Purchase, the line running about through the center thereof. This line of marked trees is parallel to the westerly line of the Purchase and the north and south lines dividing the various townships were laid out parallel to both the westerly line of the Purchase and the 55-mile line of mile trees. Following the making of the map of the Totten and Crossfield Purchase and the laying out of the greater portion of the tract into townships shown on the Jessup maps, one known as " Big Jessup Map " and the other as " Little Jessup Map ", both of which are exhibits in this case, plans were made for a division of the townships among

various interested persons. The Revolutionary War intervened and it was not until 1786 and 1787 that the Commissioners of the Land Office authorized the patent of Township 38. On February 28, 1787, letters patent to Alexander Macomb of the following described tract of land were issued:

" All that certain tract of land situate in the county of Montgomery, being part of the Indian Purchase made by Edward and Ebenezer Jessup and their associates, under a license granted to Totten & Crossfield, known and distinguished in a division of the said purchase into townships by being part of township number thirty-eight, beginning at the most northerly corner of the said township, and running thence, as the needle pointed in the year 1772, south thirty degrees, east two hundred and sixty-two chains and fifty links; south sixty degrees, west two hundred chains; north thirty degrees, west eighty chains; south sixty degrees, west forty chains; north thirty degrees, west one hundred and eighty-two chains and fifty links, and north sixty degrees, east two hundred and forty chains to the place of beginning, containing five thousand nine hundred and eighty acres, together with all and singular the rights, hereditaments and appurtenances " et cetera.

This grant to Macomb was made pursuant to certain provisions of chapter 67 of the Laws of 1786, effective May 5th of that year, the land so sold being part of the Totten and Crossfield Purchase. Before the issuance of the patent to Macomb, the State prepared a diagram of Totten and Crossfield's Purchase, which is in evidence as defendant's Exhibit K. It is not clear as to the source or purpose of this map or diagram. Suffice to say that the north line of Township 38 on Exhibit K is considerably to the south of the north line delineated on all other maps and surveys. While the State to a considerable extent predicates its title to the relatively small portion of land here involved upon Exhibit K, there is no evidence that would warrant a finding that this map or diagram was correct and that the land conveyed was that contained within the boundaries thereon shown. The Commissioners of the Land Office, at its session of May 10, 1786, authorized the Surveyor General to sell all the several townships and smaller tracts which remained unpatented in Jessup's Purchase, commonly known as Totten and Crossfield's Purchase. " And that his sales of that part of the Tract which was divided into Townships be in parcels, each parcel to be equal to one fourth part of its respective township as originally laid out. And that the several smaller tracts therein be respectively sold agreeable to their respective contents."

The Act of May 5, 1786, made specific reference to Jessup's Purchase, being Totten and Crossfield's Purchase, and contained this provision: " And whereas a tract of land, commonly called Jessups purchase was heretofore laid out into townships of six miles square, and into tracts of less dimension, a great part whereof remains unpatented. Be it therefore enacted by the authority aforesaid, That it shall and may be lawful to and for the said commissioners to direct the surveyor general, to sell all or any of the said townships and smaller tracts remaining unpatented, in such parts and parcels, as they shall direct, and the said surveyor general shall advertise, sell and certify the same in manner herein before directed; and the treasurer shall endorse on every such certificate on payment of the purchase-money, and letters patent shall pass for the same, as herein before directed."

To accept Exhibit K as an attempted reallotment of the townships of Totten and Crossfield's Purchase would be outlining and establishing a new north boundary. The Campbell north line, surveyed in 1772, has consistently been accepted and determined by the courts as the true north line to Totten and Crossfield's Purchase and the true south line of the Macomb's Purchase, the latter being an extensive tract of land running from the north line of Totten and Crossfield's Purchase to the St. Lawrence River and the Canadian border, bounded easterly by a tract of land generally known as the " Old Military Tract " and westerly by the shores of Lake Ontario. It has no relationship to Township 38 of Totten and Crossfield's Purchase, which was also patented to Macomb. Before issuing the patent to the northerly tract, known as Macomb's Purchase, the State directed that a survey be made, and one Charles Brodhead, a surveyor, was directed to survey the bounds of the proposed purchase lying north of the northerly line of Totten and Crossfield's Purchase. Brodhead evidently directed his survey from a point known as the " Tappen Corner " in the southerly line of the Old Military Tract. He started in a westerly direction, running a line a considerable distance south of the Macomb line. He apparently became doubtful of the accuracy of this line and after proceeding some forty miles, discontinued his survey in that section. Later, he commenced to run a line from the northwest corner of the Totten and Crossfield Purchase, which had theretofore been established by Campbell. However, as he proceeded from this well-established northwest corner monument his line veered to the south and after continuing his survey for about twenty-

six miles, he again stopped when he discovered that the Campbell line at that point was about fifty chains north of the line he had been running. Brodhead then started to run east on the Campbell line, apparently disregarding his own line. The two Brodhead lines, the one which started at the northwest monument and veered to the south, and the one which started from the " Tappen Corner " in the southerly line of the Old Military Tract and ran west, did not meet and had these lines been continued would not have formed a straight line but an angle. In other words, the Brodhead line veered to the south of the Campbell line from the westerly starting point as well as from the easterly starting point, the " Tappen Corner " in the southerly line of the Old Military Tract.

Apparently the Campbell line has been accepted as the proper southern line of the Macomb Purchase and the northern line of the Totten and Crossfield Purchase, and the Brodhead line rejected by the courts in the various litigations that have been carried out affecting the property in this section. (*Thompson* v. *Burhans,* 61 Barb. 260, revd. 61 N. Y. 52, 15 Hun 580, revd. 79 N. Y. 93; *People* v. *Santa Clara Lumber Co.,* 74 Misc. 610, affd. 161 App. Div. 905, affd. 213 N. Y. 226; *Litchfield* v. *Sisson,* 81 App. Div. 641; *People* v. *Tahawus Purchase,* 26 N. Y. S. 2d 795, affd. 268 App. Div. 100.) From these decisions it appears that while the Campbell line has received the approval of the courts, the Brodhead line has been entirely discredited. Furthermore, it would appear that Brodhead himself, after working both from the east and from the west, had become convinced that he was on the wrong course and had disregarded his own survey and followed the Campbell line.

If we were to accept the lines appearing on Exhibit K, as urged by the State, we would find that the northeast corner of Township 38 would not be in the north line of the Totten and Crossfield Purchase, but would be a considerable distance to the south thereof and the discredited Brodhead line. The westerly boundary line of Township 38, which is the dividing line between Townships 43 and 38, as shown on the Jessup maps, is not in controversy, nor are we concerned with the survey lines in the southwest and southeast quarters, as the land affected by this action is contained entirely in the northeast quarter of the township.

The grant of letters patent to Macomb, in 1787, described the land conveyed as " beginning at the most northerly corner of the said township," and following the authorization of the Commissioners of the Land Office, we may add, " as originally

laid out.'' There seems to be no controversy as to the easterly boundary of Township 38, which is the dividing line between Townships 37 and 38, which appears on the Forrest map in evidence. Witness Forrest testified that he definitely located the east line of Township 38 and continued this east line northerly to where it intersected the northerly line of Totten and Crossfield's Purchase, the Campbell line, on a floating bog in Mud Lake, where he set a stake to mark the northeasterly corner of Township 38. There is no question as to the identity of the lake nor as to the fact that this Mud Lake does contain numerous floating bogs, some of which are heavily wooded, and having established a point at the junction of the east line of Township 38 and the north line of the Purchase, which point is in the lake, the north line of Township 38 was readily established.

When, in 1821–1822, John Richards made allotments in various townships along the northerly boundaries of Totten and Crossfield's Purchase, he apparently subdivided the triangle north of Township 38. He properly located Campbell's northwest corner of the Totten and Crossfield Purchase and both the westerly and the easterly lines of Township 38. However, he followed the Campbell line for but a short distance and then followed the Brodhead line veering to the south as he continued easterly. It was not until he reached the easterly part of Township 37 that he discovered his error and then he apparently made his allotment northerly to the Campbell line. It can readily be seen that when he came to the allotment of the triangle north of Township 38 running on the Brodhead line, his point of intersection with the easterly line of Township 38 was a considerable distance south of the intersection of this easterly line with the Campbell line. The result was that he attempted to allot a strip off the northerly part of Township 38, which years ago had been patented to Alexander Macomb, and this small piece of land in the northeast quarter of Township 38, erroneously allotted by Richards, is the strip of land here in question and for which partition is sought. Here, again, the Brodhead line had been erroneously accepted by a surveyor as the northerly line of the Totten and Crossfield Purchase. Having placed his northeast corner south of the proper line, he then assumed to allot as part of the triangle land that was properly included in Township 38 and which had already been conveyed by the State. The true southerly line of the triangle north of Township 38 is the northerly boundary of that township.

At the time of the grant from Webb and Ne-ha-sa-ne Park Association to the People, in 1896, neither had any ownership in the northeast quarter of Township 38. With the exception of 1,000 acres near the center line of the township, the northeast quarter was in the heirs of James Barrow. Webb conveyed to the State certain lands in the triangle north of Township 38. He also attempted by the same deed to quitclaim whatever interest he had in the northeast quarter of Township 38, which interest was apparently based upon tax title subsequently declared to be void and invalid. Thereafter, he acquired his five-sixths undivided interest in the northeast quarter by deeds from the Barrows interests, the remaining one-sixth undivided interest being conveyed by the Barrows to A. Augustus Low. By deed dated November 30, 1898, Webb conveyed to the State certain of the lands in the northeast quarter of Township 38 which he had acquired from the Barrow interests, but did not convey all of the interest he had so acquired. The description in this deed was specifically limited to monumented corners which had been established as the result of a survey which definitely controlled and restricted the area of land conveyed. The metes and bounds description did not include the lands here sought to be partitioned.

From the evidence it appears that the finding of the court below that a five-sixths ownership as to this small parcel of land is in Webb, the other one sixth being in Low, subject to the inchoate right of dower of Vahdah Gara Low, was entirely correct. The State has endeavored to establish a claim to this land upon the theory that it was allotted by Richards. The answer to that contention is that at the time Richards made the allotment the land was not owned by the State, it having been previously patented to Macomb.

The court below having properly determined that the plaintiff and the individual defendants are seized of a valid title to the land in question, the judgment should be affirmed.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; BREWSTER, J., taking no part.

Judgment affirmed, with costs. [See *post*, p. 836.]