## RIDLEY v. WALTER et al.

(Supreme Court, Appellate Division, First Department. November 8, 1912.)

1. ADVERSE POSSESSION (§ 12*)—CLAIM OF TITLE—DISCLAIMER—ESTOPPEL BY DEED.

Where a husband. on conveying certain property to his wife, did not include in the deed an adjoining strip of the property in controversy, which had been inclosed by a fence and was used as a passway, such deed amounted to a disclaimer by him of any claim of ownership in the strip; and hence the wife could not establish a claim of title to the strip by adverse possession on the strength of any claim of title which had previously been made by her husband.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 66, 387–393; Dec. Dig. § 12.*]

2. MORTGAGES (§ 521*)—FORECLOSURE—TITLE—RELIEF FROM BID.

Where an adjoining property owner had inclosed a strip of the mortgaged property, 2 feet 8 inches in width, running the full length of the lot, and used the same for a passway for more than 20 years, her right to an easement in the continued use of the way constituted such a defect in the title to the mortgaged premises as justified the purchaser in foreclosure proceedings to refuse to comply with his bid.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1521; Dec. Dig. § 521.*]

Appeal from Special Term, New York County.

Action by Edward Albert Ridley, as sole surviving trustee under the will of Edward Ridley, deceased, against Magdalena Walter and others. From an order denying the application of the Kank Realty Company to be relieved from the purchase at foreclosure sale of certain real property, and from an order denying said purchaser's motion for leave to renew a former motion, it appeals. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

John H. Post, of New York City, for appellant.
Middleton S. Borland, of New York City, for respondents.

SCOTT, J. These are appeals by the assignee of a purchaser at a foreclosure sale from an order denying its motion to be relieved of its bid, and from a further order denying its motion for a reargument of its former motion. We consider both appeals together, because certain facts which the appellant deems important are contained in the papers used on the second motion, which were not presented to the court on the first motion.

The premises affected lie on the northerly side of 166th street, in the borough of the Bronx, between Washington avenue and Park (formerly Railroad) avenue. The property was described in the mortgage and in the terms of sale by metes and bounds; the description commencing the boundaries of the lot at a point on East 166th street "at the westerly boundary of lands now or formerly of George Hull." The only objection to the title which is seriously urged, and that need be considered, is the supposed claim of the owner of the Hull prop-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erty to the ownership of, or the right to occupy and use, a strip of land about 2 feet 8 inches in width running back the full length of the lot, being part of the land mortgaged and lying next west of the Hull property. The present owner of the Hull property, Mrs. Anna E. Spaeth, has record title only to the easterly line of the mortgaged property, to wit, a line 158 feet west of Washington avenue; the westerly side of her house being on the westerly line of her lot. She derived title from her husband, John L. Spaeth, in 1897. He acquired the premises in 1864 from one Catherine E. James. When John L. Spaeth acquired possession, the strip in question was inclosed by a fence. That fence or its successor has been maintained ever since by said Spaeth or his wife, and still stands, although in a somewhat dilapidated condition. On the strip is laid a plank walk, which has been continuously used by Mrs. Spaeth and her husband for a good many years, probably more than 20.

[1] Under what claim of right, if any, the Spaeths, husband and wife, have continued to occupy and use this strip of land is not made clear. True, Mrs. Spaeth says that, when her husband acquired the Hull property in the year 1864, he considered and claimed the fence on the westerly side of the strip as the westerly boundary of his land, and that during his lifetime and until his conveyance to his wife he maintained possession of the strip and claimed to be the owner thereof. That he, and his wife after him, retained the use and possession of the strip, is doubtless true; but the wife's affidavit as to how he claimed to be the owner of it lacks specification as to how such claim was expressed. That he did not claim to be the owner of it in 1897 is made quite clear from the fact that, when he conveyed the Hull property to his wife in that year, he so conveyed the property by a description which fixed its westerly boundary as 158 feet from Washington avenue, being the line of the westerly line of the house erected upon the premises, and excluded from the description the whole of the disputed strip. This amounted, as we think, to a disclaimer by him of any claim to the ownership of the strip, and conclusively answers the contention that he then claimed to own it, and undertook to convey it to his wife. She cannot, therefore, establish a claim to title by adverse possession upon the strength of any claim of title which may previously have been made by her husband, and she herself has not been in possession for 20 years, so as to erect a claim of title upon her own adverse possession.

[2] We are not entirely satisfied, however, that, even if Mrs. Spaeth could not establish a claim to an absolute title by adverse possession, she might not give a purchaser considerable trouble by asserting the ownership, as an appurtenance to her lot, of an easement of access over the disputed strip. Her possession and use and that of her husband before her has been open, notorious, and continuous, apparently for much more than 20 years, and has been adverse to the real owner, in that the Spaeths, by keeping the strip fenced off, have openly asserted their right to its exclusive use. We do not desire to be understood as deciding, or even intimating, that such a claim could be successfully maintained. To so decide would probably

require the consideration of facts not contained in the papers on appeal.

It is sufficient for the purposes of this appeal that Mrs. Spaeth might be in a position to assert a claim which it would require litigation to determine, and which cannot be definitely determined in this proceeding, to which she is not a party. "A purchaser on a partition or foreclosure sale has a right to expect that he will acquire a good title, and the law presumes that he bids with that object in view. He should not be left, upon receiving a deed, to the uncertainty of a doubtful title, or the hazard of a contest with other parties, which may seriously affect the value of the property if he desires to sell the same." Jordan v. Poillon, 77 N. Y. 518. See, also, Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Crouter v. Crouter, 133 N. Y. 55, 30 N. E. 726; Wanser v. De Nyse, 188 N. Y. 378, 80 N. E. 1088, 117 Am. St. Rep. 871. What was said in Koechl v. Gate Development Co., 149 App. Div. 239, 133 N. Y. Supp. 763, affirmed 205 N. Y. 591, 98 N. E. 1106, is applicable to the present case:

"While it is true that the affidavits submitted upon the motion do not conclusively show that there is any defect in the title, it is plain to be seen that there is an opportunity for a lawsuit, which appears to be threatened. * * * It is true that the facts do not appear positively; but there is clearly enough of the claim of the Greenwich Company to make it fairly certain that the title to the premises will be brought into question in some kind of an action, and it would be a hardship to the purchaser * * * to compel him to stand the expense and annoyance of a lawsuit."

We think that, under the rule established in the foregoing and many other cases, enough has been shown to entitle the purchaser to relief from his bid, with a return of the 10 per cent. and auctioneer's fees paid on the sale, with interest, and the reasonable charges incurred in the examination of the title. If the referee has not enough in his hands to meet these payments, the deficiency should be made up by the plaintiff. Raynor v. Selmes, 52 N. Y. 579; Builders' Mortgage Co. v. Berkowitz, 142 App. Div. 57, 126 N. Y. Supp. 464, affirmed 201 N. Y. 596, 95 N. E. 1124.

The orders appealed from will therefore be reversed, with $10 costs and disbursements on each appeal to the appellant, and the motion for relief from the bid will be granted, with $10 costs. All concur.

---

## In re LENT.

(Supreme Court, Appellate Division, First Department. November 8, 1912.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT—GROUNDS.

An attorney, who in violation of his obligation to his client appropriates to his own use the proceeds of two checks for large amounts, which he has received from his client, an administratrix, to deposit with a surety company, will be disbarred.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]