RAMAPO MANUFACTURING COMPANY, Respondent, *v.* JULIA P. MAPES, Appellant.

Adverse possession — construction of statute defining adverse possession — erroneous charge as to acts of possession — evidence — erroneous admission and exclusion of evidence offered to show location of boundary line.

1. Where the defendant in an action to recover the fee and the possession of land pleaded adverse possession and that question was submitted to the jury, it was error for the trial court to charge, as a matter of law, and unqualifiedly, that cultivation means to disturb the surface of land, and to sow and cultivate and reap, and in substance that cutting grass from a lot is not such an improvement as may constitute adverse possession. The language of the statute, which defines and declares that which constitutes adverse possession (Code Civ. Pro. § 370), should be construed with reference to the nature, character, condition and location of the property under consideration.

2. Plaintiff, in order to prove the location of a boundary line by a surveyor who was not called, was permitted to give the testimony of one of its officers that he saw the surveyor run out and locate the line in controversy at the point claimed by plaintiff to

be the true line. Such testimony was admitted without any proof of the competency and authority of the surveyor to make the survey, without proof of its purpose and without the defendant having an opportunity to examine the surveyor or the minutes, or maps, if any, made by him therefrom. *Held,* reversible error.

3. The trial court improperly admitted the testimony of a witness for the plaintiff to the effect that he had previously been employed to make a survey of defendant's property for defendant; that he had difficulty in finding an elm stump as a starting point; that the defendant asked him to take as a corner a tree which had no marks on it showing that it was a corner, or the starting point, which he refused to do, as the line therefrom would run on the property of another, and when he refused defendant said that she would get another surveyor.

4. The witness after testifying that the strip of land in dispute was outside of the defendant's property testified under objection that the property adjoining was the property of the plaintiff. *Held,* error; that this was the very question that the jury was to pass upon.

5. Defendant, seeking to show that a certain elm tree, twenty inches in diameter and on the line claimed by her, was the tree referred to in the deed to defendant's predecessor in title, executed in 1871, offered testimony by a competent witness to show that an elm tree twenty inches in diameter could be forty years old. This was excluded by the trial court as immaterial and improper. *Held,* error; that the growth of a tree and its probable or necessary size at a certain age are questions of fact, and that, therefore, the evidence was not immaterial or incompetent.

*Ramapo Mfg. Co.* v. *Mapes,* 159 App. Div. 916, reversed.

(Argued October 26, 1915; decided December 7, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 17, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eli J. Blair* for appellant. Plaintiff failed to show title or ownership to the disputed strip. Its case rests

wholly upon improper and incompetent evidence. (*Carroll* v. *Carroll*, 60 N. Y. 121; *Jarvis* v. *Lynch*, 157 N. Y. 445; *Aubuchon* v. *N. Y., N. H. & H. R. R. Co.*, 137 App. Div. 834; *People* v. *Inman*, 197 N. Y. 200; *Sheridan* v. *Cardwell*, 141 App. Div. 854; *Elliott* v. *Lewis*, 10 Hun, 486; *Wells* v. *Jackson Iron Mfg. Co.*, 47 N. H. 235; *Bryan* v. *Buckley*, Litt. [Ky.] Sel. Cas. 91; 12 Am. Dec. 276; *Greene* v. *Cornwell*, 1 City Hall Rec. [N. Y.] 11; *Seufferle* v. *Macfarland*, 28 App. Div. 94.) The court erroneously charged the jury as to what constituted adverse possession. (*Jackson* v. *Wheat*, 18 Johns. 44; *Humberts* v. *Trinity Church*, 24 Wend. 587; *La Frombois* v. *Jackson*, 8 Cow. 589; *Abrams* v. *Rhoner*, 44 Hun, 507; *O'Donohue* v. *Cronin*, 62 App. Div. 379; *Ledoux* v. *Samuels*, 116 App. Div. 726; *Tarplee* v. *Sonn*, 109 App. Div. 241; *N. Y. C. & H. R. R. R. Co.* v. *Brennan*, 12 App. Div. 103; *Shinnecock Hills & P. B. R. Co.* v. *Aldrich*, 132 App. Div. 118; *McRoberts* v. *Bergman*, 132 N. Y. 73.)

*John F. McFarlane* for respondent. Plaintiff clearly proved its title and ownership of the land in question. (*Jackson* v. *Wilkinson*, 17 Johns. 146; *Jackson* v. *Wendell*, 5 Wend. 142; 8 Wend. 183; *Elliott* v. *Lewis*, 10 Hun, 486; *Seneca Nation* v. *Hugaboom*, 132 N. Y. 492; *Cochran* v. *Smith*, 73 Hun, 597.) Defendant failed to prove adverse possession of the disputed land. (*Kneller* v. *Lang*, 137 N. Y. 589; *Doherty* v. *Matsell*, 119 N. Y. 646; *Barnes* v. *Light*, 116 N. Y. 34; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 1 App. Div. 251; *Gross* v. *Welwood*, 90 N. Y. 638; *Tindale* v. *Powell*, 88 Hun, 193; *Whiting* v. *Edmonds*, 94 N. Y. 309; *Deering* v. *Riley*, 38 App. Div. 164.)

CHASE, J. The plaintiff by its complaint alleges that it is the owner in fee and entitled to the possession of certain real property in Rockland county therein described.

The complaint also alleges that the defendant is the owner of certain real property adjoining the real property which it alleges is owned by it, and that the real property so owned by the defendant is (omitting immaterial parts) bounded and described as follows:

"All that piece or parcel of land east of the Ramapo river at Ramapo in the county of Rockland and state of New York, beginning at an elm tree near the top of the bank of said river at the point where the southerly line of the proposed new Torne Brook Road would strike if it continued straight to the river, thence north fifty-seven and a half degrees east * * * to a point in the middle of old stone wall * * * containing eleven acres, be the same more or less."

It further alleges that on the 1st day of July, 1907, and for many years prior thereto, it had been in the possession of the tract of land therein described as owned by it, and that on or about said 1st day of July, 1907, the defendant "unlawfully entered upon said described land and premises and erected an iron fence with stone gate posts forming an entrance way, which said fence and gate posts entirely enclosed plaintiff's said tract or parcel of land as well as the defendant's said land and premises."

It further alleges that the defendant "Is in wrongful and unlawful possession of plaintiff's said described tract or parcel of land claiming title thereto and has excluded and continues to exclude the plaintiff from the possession thereof," and it demands judgment for the removal of said fence and gate posts and for the recovery in fee of said tract of land and the possession thereof with damages. At the trial the jury rendered a general verdict "For the plaintiff" and upon such verdict judgment was entered in accordance with the prayer of the complaint.

We think errors were committed at the trial which require that a new trial of the issues be granted.

All of the lands described in the complaint with other

lands adjoining the same on the north were in 1871 and prior thereto owned by the plaintiff as one tract of land. On June 20, 1871, the plaintiff sold to the defendant's father (one of her predecessors in title) the lands among others which are described in the complaint as now owned by her. It was necessary in this action to determine the location of the north line of the lands of the defendant, which are described in the complaint. In determining that question the identity of a badly decayed stump in the bank of the Ramapo river as the stump of the elm tree referred to in the description of the defendant's land as "near the top of the bank of said river" was important.

The plaintiff called as a witness a surveyor who testified to finding a stump of an elm tree near the bank of the river with some stones piled against it, and some red paint on the stones, which stump he accepted as the beginning point in making the survey of the property in the interest of the plaintiff.

The president of the plaintiff (but who so far as appears was not an officer of the plaintiff in 1870 or 1871) was recalled as a witness by the plaintiff immediately before the close of its case and he testified that he remembered a former survey of the property made in 1870. He afterwards referred to the date as 1871, but it is not shown whether the survey was made before or after the deed to the defendant's predecessor in title, or whether it was in any way connected with or related to that conveyance. He testified that he thought, but was not sure, that the name of the surveyor was Veeley. Veeley was not called as a witness. The record continues as follows:

"Q. You saw him run out this particular line to the front of Mrs. Mapes' property?

"Defendant's counsel: Objected to as incompetent, immaterial. Objection overruled. Exception taken by defendant's counsel.

"A. Yes, sir.

" Q. Where did you observe the surveyor locate that particular line at that time, the line to the front of Mrs. Mapes' present property ?

" Defendant's counsel: Same objection.

" Objection overruled.  Exception taken by defendant's counsel.

" A. From that stump.  The same line that the deed mentions.  That line was located as I observed it in reference to where Mr. Washburn (plaintiff's surveyor above mentioned) locates it in his last survey.  Just the same. * * * In reference to this elm stump at the time of the survey in 1871 that I referred to that monument was then a stump or tree.  I recall at that time these stones placed around it and the wall at the embankment. * * * I say I recall this elm tree when a survey was made in 1871.  The red paint was not on it then.  It was put on by the surveyor at the time.  I did not see him put it on. I didn't testify with regard to that survey at the other trial.  I was not asked.  I have recollected."

This testimony was given without any proof of the competency and authority of the surveyor to make the alleged survey and without proof of its purpose, and without the defendant having an opportunity to examine the surveyor or the minutes, or maps, if any, made by him therefrom.  While the witness was doubtless competent to show the one fact that a stump or tree then existed at the place where it is claimed that a stump now exists, it was not competent to · show where the surveyor then located the line at the front of Mrs. Mapes' present property or that a surveyor then located the line now in dispute, " the same line that the deed mentions," " where Mr. Washburn (plaintiff's surveyor) locates it in his last survey, just the same."

The testimony given subject to objection was much more than evidence of the existence of the tree in 1870 or 1871.  It was given and received and is even now urged as complete corroboration and confirmation of the testi-

mony and conclusions of plaintiff's surveyor, Washburn, relating to the line in dispute. This evidence so received at the close of the plaintiff's case with the approval of the court was naturally calculated to affect the jurymen in reaching a conclusion upon the most important issue left to them for their determination.

We think the receipt of the testimony without laying any foundation therefor (Wigmore on Evidence, 1919–1924), and without giving the defendant an opportunity of determining its accuracy, basis and history, and by whose direction and instructions, and for what purpose it was made, was serious error.

The plaintiff's surveyor, Washburn, during his direct examination soon after the beginning of the trial, gave testimony subject to objections and exceptions, the record of which is as follows:

"Q. Before this fence in question was erected did this defendant employ you to survey his wife's property?

"Defendant's counsel: Objected to as immaterial and incompetent.

"Objection overruled. Exception taken by defendant's counsel.

"By the Court: Did the defendant Mrs. Mapes employ you?

"A. Yes, sir, * * * I surveyed a part of it; I didn't survey the whole property because we had difficulty in finding — well, we didn't find the stump at that time; there were a number of elm trees there, and they didn't tally with the description in the deed of Mrs. Mapes — well — we didn't find the stump at that time; there was brush growing there, and we were looking for a tree all the time, and Mrs. Mapes asked me to take one of the other trees — adopt one of the other trees. Yes, sir. And there were no marks on it showing that it was a corner and I couldn't do that. I refused to do it and that stopped that survey. He told me to stop, he said he would get another surveyor. I did more than I have told you. The

tree he wanted me to run from wouldn't give me the other monuments, the lines would carry me across the Torne Brook on some other property on the property of Mr. Hamilton."

This testimony should not have been received. By it the plaintiff as a part of its affirmative case sought to show the honesty of its surveyor and the probable integrity of the survey made by him and at the same time to discredit whatever might thereafter be shown by the defendant by attacking her personal honesty and good faith in trying to sustain a defense interposed by her. It was an appeal to prejudice and not competent for any purpose.

After the witness Washburn had testified that the strip of land in dispute was outside of the defendant's property as he had mapped it he further testified that he had surveyed the plaintiff's property and he was then asked: " Q. What property immediately adjoins the defendant's northwesterly line ? "

The defendant's counsel objected to the question as calling for a conclusion. The objection was overruled and the defendant excepted, whereupon the witness answered: " Ramapo Manufacturing Company." The question had reference to the defendant's northwesterly line as the witness had mapped it, and he was thus improperly permitted to answer the very question that the jury was to pass upon. (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187.)

It appears from the testimony of one of the defendant's witnesses that there is an elm tree on the river bank about in line with the gate posts erected by the defendant on the line claimed by her, which tree is twenty inches in diameter. The defendant sought to show that the tree was the one referred to in the deed of 1871, and for the purpose of showing that it must have been growing there in 1870 asked a witness, whose competency to speak on the subject of the growth of trees was conceded, or at least not disputed, questions in regard thereto, but he

24

was not permitted to answer them. The record is as follows:

"Q. Do you know whether an elm tree twenty inches in diameter could be forty years old ?

"Plaintiff's counsel: Objected to as immaterial, incompetent.

"Objection sustained. Defendant's counsel: Exception.

"Q. Have you seen any elm trees forty years old that are less than twenty inches in diameter ?

"Plaintiff's counsel: Objected to as immaterial, irrelevant and incompetent. Objection sustained. Exception to defendant's counsel."

The usual growth of an elm tree at a given place and its probable or necessary size at a certain age are questions of fact and it cannot, therefore, be said that the questions were immaterial or incompetent. We think that the court should have allowed the witness to answer them.

The defendant by her answer and at the trial, claimed title to the lands in dispute by adverse possession. The respondent in his brief states, "*The defendant made some proof to support her contention of owning the disputed land by adverse possession,* but this proof was overwhelmingly met by proof to the contrary."

Adverse possession is a question of fact to be decided by the jury. (*Whiting* v. *Edmunds,* 94 N. Y. 309.) The question was presented to the jury in this case. In doing so the court charged the jury that "To acquire title by adverse possession, the possession must in the first place be under a claim of lawful right to possession of the property."

A naked possession of land unaccompanied by a claim of right never constitutes a bar to the true owner, but in the absence of a statutory requirement the *bona fides* of the claim of the occupant is not essential and it will not excuse the negligence of the owner in forbearing to bring his action until after the time in the Statute of Limita-

tions shall have run against him to show that the defendant knew all along that he was in the wrong. (*Humbert v. Rector, etc., of Trinity Church,* 24 Wend. 587.)

The court further charged the jury: "Gentlemen, there is evidence here that for a period of thirty or forty years before this action was commenced the different occupants of this property (defendant's property) cut the hay from a part of this disputed tract once a year. In other words that they cut and removed from it the natural product of the soil. Cultivation of land means more than that; it means to till the land, to disturb the surface, and to sow and cultivate and reap. That is what cultivation means as I understand it. So that if no more was done to this property than the cutting and removing of the natural product, the hay, once a year, without tilling the soil, without sowing, without disturbing the surface, then there was not such a cultivation as is necessary to make out adverse possession."

The defendant's counsel excepted to this charge of the court. Subsequently the court said: "Cutting the hay from this property year after year cannot be regarded as an improvement of it. That is not what the word 'improved' as used in the law means. Cutting grass from a lot is not such improvement as may constitute or make out adverse possession    *    *    *. Cutting grass may improve the appearance of property but it does not improve the land in the sense in which that word was used in the law."

The court said much more in regard to what constitutes adverse possession and charged at the request of the defendant's counsel: "That in determining whether the cultivation or improvement is sufficient to constitute the usual cultivation or improvement required by the law the jury must consider the character of the property, and whether the property in question was cultivated and improved in the same manner in which property of the same character is ordinarily cultivated and improved." The last statement was a correct statement

of the rule. It was not given, however, in connection with or intended to qualify the other statements quoted.

Assuming as we do in view of the respondent's admission that the defendant gave some proof to support her contention of owning the disputed land by adverse possession, and also in view of the fact that the question was submitted to the jury, we think the court erred in asserting as a matter of law and unqualifiedly that cultivation means to disturb the surface of land, and to sow and cultivate and reap, and in substance that, as a matter of law, cutting grass from a lot is not such improvement as may constitute adverse possession.

The language of the Code (Code Civil Procedure, § 370) should be construed with reference to the nature, character, condition and location of the property under consideration. (*Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich*, 132 App. Div. 118; affd., 200 N. Y. 533; *N. Y. C. & H. R. R. R. Co.* v. *Brennan*, 12 App. Div. 103; *McRoberts* v. *Bergman*, 132 N. Y. 73; *Koch* v. *Ellwood*, 138 App. Div. 584; *Clark* v. *Phelps*, 4 Cow. 190-203.)

In the *Shinnecock Hills & Peconic Bay Realty Co.* case Justice MILLER, writing for the Appellate Division, and speaking of an upland meadow, says: "No one would doubt that mowing it annually and taking away the grass were enough to constitute adverse possession. A good farmer might fertilize his meadow lands and regularly break them up; but he would still have adverse possession of them within the meaning of the statute, if he merely cut and carried away the grass * * *." (p. 124.)

Necessarily the cultivation and improvement of real property used and solely adapted for use as a meadow and as a part of a farm, or as a lawn surrounding a country residence, is essentially different from that of lands similarly adapted to gardening or to the raising of grain. The purpose of the statute was to make the possession real, and not constructive, so that it shall be visi-

ble, open and notorious. Much depends upon the nature and situation of the property and the uses to which it can be applied. (*Ewing* v. *Burnett*, 11 Pet. 41, 48.) It was necessary for the defendant, for the purpose of showing adverse possession, to prove such cultivation and improvement as to indicate exclusive ownership of the property. (*La Frombois* v. *Jackson*, 8 Cow. 589.) Entering upon a distinct and separate lot of land once a year to cut and remove a load or two of thatch is not sufficient to constitute adverse possession under our statute. Such an entry is a mere trespass. (*Wheeler* v. *Spinola*, 54 N. Y. 377; *Price* v. *Brown*, 101 N. Y. 669.) A trespass upon lands although frequently repeated does not amount to adverse possession. The cultivation and improvement under our statute must not only be open, notorious and exclusive of any other claimant or owner, but it must consist of acts such as are usual in the ordinary cultivation and improvement of similar lands by thrifty owners.

The appellant claims that there were many other errors committed at the trial, and also that the verdict of the jury did not authorize the entry of judgment for the relief demanded in the complaint. (See Code Civil Procedure, § 1519.)

It is not necessary to discuss in this opinion all of the questions involved in the appellant's claims, for the reason that a new trial is necessary, and such questions will probably be avoided on such new trial.

The judgment should be reversed and a new trial granted, costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur.

Judgment reversed, etc.