ANSELMO BELOTTI, Respondent, *v.* ANDREW BICKHARDT, Appellant, Impleaded with Others.

**Real property** — title by adverse possession — elements constituting an effective adverse possession — adverse possession by claim of successive tenants by unbroken chain of privity between adverse possessors — evidence sufficient to prove title by adverse possession.

1. Adverse possession, even when held by a mistake or through inadvertence, may ripen into a prescriptive right after twenty years of such possession, the actual physical occupation and improvement being, in a proper case, sufficient evidence of the intention to hold adversely.

2. There are five essential elements necessary to constitute an effective adverse possession: *First*, the possession must be hostile and

under claim of right; *second,* it must be actual; *third,* it must be open and notorious; *fourth,* it must be exclusive, and *fifth,* it must be continuous. If any of these constitutents is wanting, the possession will not effect a bar of the legal title.

3. The claim of adverse possession may continue unbroken by a succession of tenants and where this occurs the adverse possession may be just as effectual as though the premises were held during the whole period by one person. All that is necessary in order to make an adverse possession effectual for the statutory period by successive persons is that such possession be continued by an unbroken chain of privity between the adverse possessors.

4. Defendant's predecessor in interest conveyed a city lot of which he was in possession and to which he had title. The building upon the premises was in part located upon a lot to which he had no title except by possession, and which was not included in his conveyance. In an action to determine the title to that portion of the lot the defendant set up adverse possession as a defense. There was evidence that such possession of the building for the statutory period by defendant and his predecessors was clear and continuous. *Held,* that the intent to transfer the possession of the building and land as a whole was properly shown, since such transfer may be by parol as well as by deed, and the defense of adverse possession is thereby maintained.

*Belotti* v. *Bickhardt,* 180 App. Div. 890, reversed.

(Submitted January 22, 1920; decided April 13, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 24, 1917, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term decreeing that the plaintiff was the sole owner in fee entitled to the possession of certain real property; that the defendant Bickhardt was wrongfully in possession of that portion of the property which encroached by a building upon plaintiff's land; that defendant Bickhardt and all persons claiming under or through him had no right or title in the plaintiff's land, fixing the boundary line between the plaintiff's and the defendant's premises and awarding damages and costs.

The facts, so far as material, are stated in the opinion.

*Stephen O. Lockwood* for appellant. The defendant Bickhardt has acquired title to the *locus in quo* by adverse possession. (Code Civ. Pro. §§ 371, 372; Washburn on Real Prop. [6th ed.] 130, § 1968; *Crary* v. *Goodman*, 22 N. Y. 170; *Brinner* v. *Long Wharf*, 5 Pick. 131; *French* v. *Pierce*, 8 Conn. 439; *Caulfield* v. *Clark*, 17 Ore. 473; *Barnes* v. *Light*, 116 N. Y. 35; *Baker* v. *Oakwood*, 123 N. Y. 16; 49 Hun, 416; *Stillwell* v. *Boyer*, 36 App. Div. 424.) The portion of the premises which was originally part of Berrian avenue is in no different situation as to acquisition of title thereto by adverse possession than the other portion of the land. (*Bliss* v. *Johnson*, 94 N. Y. 235; *Thompson* v. *Burhans*, 79 N. Y. 93; *Driggs* v. *Phillips*, 103 N. Y. 77; *Bissel* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Wager* v. *T. U. R. R. Co.*, 25 N. Y. 529.) The seizins from Riedel to Bickhardt are so tacked together as to make a continuous possession. (*Vandall* v. *St. Martin*, 42 Minn. 163; *Kepley* v. *Scully*, 185 Me. 52; 3 Washburn on Real Prop. [9th ed.] 133, § 1973; *Saith* v. *Chapin*, 31 Conn. 530; *Bateman* v. *Jackson*, 45 S. W. Rep. 224; *City of St. Louis* v. *Granen*, 29 Mo. 593; *Butler* v. *Barnes*, 60 Conn. 170; *Wills* v. *Sanders*, 19 J. & S. 384.) The deed made by the widow and devisees of Riedel in 1916 to correct the deed of 1906 is not void for champerty. (Fowler's Real Prop. Law, 888, 889; *Dawley* v. *Brown*, 79 N. Y. 390.)

*Charles P. Hallock* for respondent. Defendant Bickhardt has not acquired title to the *locus in quo* by adverse possession. (*Smith* v. *Rich*, 80 Hun, 287; *Sillman* v. *Payne*, 70 Hun, 459; *Buffalo R. R. Co.* v. *Collins*, 41 App. Div. 8; *Ridley* v. *Walter*, 153 App. Div. 65; *Staples* v. *Schnackenberg*, 148 App. Div. 161; *Cutting* v. *Byrnes*, 57 App. Div. 185; *Kueller* v. *Lang*, 137 N. Y. 589.) Defendant Bickhardt has not acquired title to the part of the premises which was originally part of Berrian avenue by adverse possession. (*Driggs* v. *Phillips*, 103 N. Y. 77.)

The deed made in 1916, just before the trial, does not help the title of the defendant Bickhardt. (*Bliss* v. *Johnson*, 94 N. Y. 235; *Staples* v. *Schnackenberg*, 148 App. Div. 161; *Crary* v. *Goodman*, 22 N. Y. 176; *Green* v. *Horn*, 207 N. Y. 489.)

ELKUS, J. The plaintiff's mother, Maria G. Belotti, in 1897, and the defendant Bickhardt's predecessor in interest, Gustave Riedel, in 1892, purchased adjoining parcels of land now in the. borough of The Bronx,. New York city, and then on Berrian avenue, and now by the opening of Webster avenue located on the latter avenue. The plaintiff's property was a lot known as " K " on a map made by Josiah A. Briggs, dated May 5, 1889, and the defendant's property was known as lots " H," " I " and " J " on the same map. Lot " J " immediately adjoined lot " K." About 1892 the then owner of defendant Bickhardt's lots, one Van Schaick, erected a building on lot " J " and a portion of lot " K," the building extending from the rear of the lots to the easterly side of Berrian avenue. The building thus erected actually encroached upon plaintiff's lot, so that it covered a portion of it, twelve feet in width and fifty-one feet in depth, with a substantial structure.

In December, 1892, Van Schaick conveyed the three lots known as " H," " I " and " J " to Riedel, with the building thus erected, partly on lot " J " and partly on lot " K," as indicated, and Riedel entered into the occupation of the premises and used the building as a saloon and roadhouse continually thereafter until his death which occurred June 18, 1898.

In 1897, Webster avenue was legally opened and Berrian avenue closed, the grade of Webster avenue was raised and Riedel raised his building, placing a foundation under it, to conform to the grade of Webster avenue, and added an extension westerly over the discontinued Berrian avenue to the new easterly line of Webster avenue.

This addition likewise encroached on the plaintiff's lot for a width of twelve feet and the depth of the widening of the avenue.

Riedel left a last will and testament, and his devisees and heirs conveyed the four lots " G," " H," " I " and " J " to the defendant Bickhardt by deed dated August 16, 1906. Between Riedel's death in 1898, and the conveyance by the heirs at law and devisees in 1906, the premises including that portion of the building which was upon the plaintiff's lot were actually occupied by Riedel's heirs and devisees.

After Bickhardt received this deed, the possession of Riedel and his widow and devisees was continued in him uninterruptedly.

By an alleged corrective deed, dated April 24, 1916, and not recorded, the devisees and heirs of Riedel attempted to correct their deed of 1906 and convey to the defendant Bickhardt by correct description the premises of which he was actually possessed, including the portion of the plaintiff's property which is the subject-matter of this action. The trial court held that this instrument was champertous and of no effect.

Since August 16, 1906, Bickhardt has used and rented the entire building, including that portion of the property of plaintiff on which the portion of the building stands, for a hotel, and collected rent therefor.

The contest of the parties is as to the right of possession and title to the strip eleven and thirty-one one-hundredths feet wide and by about fifty-one and thirty-four one-hundredths feet in depth on part of lot " K." Riedel and his devisees and heirs had undisputed possession from December, 1892, to 1906, a period of fourteen years, and Bickhardt has had possession ever since. Bickhardt's claim is that his possession tacked on to that of his grantors and their testator entitles him to defeat the plaintiff's claim and justifies his claim of title by adverse possession.

The action was for recovery of the land thus seized and for possession thereof, for damages and for a mandatory injunction directing the removal of the encroaching building.

The trial court held that the defendant having no record or paper title to the disputed premises, must show not only adverse possession as provided by sections 371 and 372 of the Code of Civil Procedure, but that there was privity of estate or contract between the successive possessors. It also held that there was no evidence of any intent on the part of Riedel or his predecessors in title to take possession of any portion of the plaintiff's lot, except as may be inferred from the fact of possession alone.

The Appellate Division affirmed this judgment by a divided court without opinion.

It appears that the encroachment by Van Schaick, who built the building, now partially upon the plaintiff's lot, in 1892, was because of a mistake made by reason of an error in an old sketch map erroneously locating lots "H," "I," and "J" and "K," and if this map was correct, the building did not encroach upon the plaintiff's lot. This faulty map appears to have been generally followed and was followed by both the plaintiff's and the defendant's predecessors in interest.

If Riedel or his heirs had retained title to the premises and occupied the same adversely until the twenty years required by law had expired, there would be little or no question as to their having acquired title by adverse possession. Bickhardt has continued to occupy the same building which has been occupied by him and his predecessors in interest for thirty-five years. The building is a substantial, two-story, frame structure with stone foundation and is used as a hotel. The defendant's wife, who was the daughter of Riedel, testified that her father, with whom she then lived, moved on the premises in question in 1892 and lived there and carried on his

business as a saloon-keeper until his death. Bickhardt purchased the property in 1906 for $14,000. The plaintiff admits that he actually saw the building erected by defendant Bickhardt's predecessors in interest; that it substantially was as it is now and that the plaintiff's father, one of his predecessors in title, had erected or moved a building on his own lot immediately adjoining.

Adverse possession, even when held by a mistake or through inadvertence, may ripen into a prescriptive right after twenty years of such possession (*Crary* v. *Goodman*, 22 N. Y. 170; *Barnes* v. *Light*, 116 N. Y. 34; *Baker* v. *Oakwood*, 123 N. Y. 16; Washburn Real Prop. [6th ed.] sec. 1968, p. 130), the actual physical occupation and improvement being, in a proper case, sufficient evidence of the intention to hold adversely. (*Barnes* v. *Light*, 116 N. Y. 34.)

There are five essential elements necessary to constitute an effective adverse possession; *first*, the possession must be hostile and *under claim of right; second,* it must be actual; *third,* it must be open and notorious; *fourth,* it must be exclusive; and *fifth,* it must be continuous. If any of these constituents is wanting, the possession will not effect a bar of the legal title. (*Doherty* v. *Matsell*, 119 N. Y. 646; Am. & Eng. Ency. of Law [2d ed.], p. 795.)

The trial court found that there was privity of estate between Riedel and his heirs and that thus adverse possession was proven from 1892 to 1906. In 1906 the conveyance from Riedel's heirs to the defendant was made and recorded. This deed, however, did not include in its description any portion of the plaintiff's property, lot " K," but described the northerly boundary of the property conveyed as running along lot " K," claimed by plaintiff, thereby excluding any portion of lot " K," plaintiff's property, from the terms of the conveyance. This, the trial court says, shows a clear intent upon the part of the grantors of the defendant Bickhardt not to

convey any land not expressly included in the description and not to convey that portion of the plaintiff's premises claimed to be adversely possessed.

The lower court and the respondent rely upon three cases decided by courts in this state as authority for this proposition. (*Staples* v. *Schnackenberg*, 148 App. Div. 161; *Ridley* v. *Walter*, 153 App. Div. 65; *Smith* v. *Reich*, 80 Hun, 287; affd., on opinion below, in 151 N. Y. 642.)

These cases may be distinguished on the ground that there was no evidence of an intent on the part of the grantor to transfer possession to the grantee of any land not expressly included in the descriptions of the conveyances there shown.

The findings of fact and the evidence, however, clearly show the intent, not only to transfer the title to the lot which is described in the deed to the defendant Bickhardt, but also to transfer possession of the building as a whole and not merely that part of it which stood upon the lot to which Riedel and his heirs had unmistakable title.

*Smith* v. *Reich* (80 Hun, 287, 288) was an ejectment suit affecting a small tract of land in the town of Islip. The Smiths, the plaintiffs, were owners of several hundred acres of land lying east of the defendant Reich's land, and the question turned upon the location of the westerly boundary of the plaintiffs' land and the easterly boundary of lands described in a deed from Cordts to Reich. The question arose as to evidence offered by Reich tending to establish adverse possession to the plaintiffs' land being excluded improperly in order to change this line. The land in question was vacant land and the claim was that it had been cultivated under a claim of title. BROWN, J., says: " It did not appear that any person in appellant's (Reich's) chain of title ever had occupied the land, and no offer to show that fact was made."

*Staples* v. *Schnackenberg* (148 App. Div. 161, 162, 163) was also a case of vacant land. MILLER, J., says: "As the defendant's deed expressly excluded the lot TT (the land

in dispute), there was no privity of contract between him and his grantor with respect to it, and his possession cannot be tacked on to hers to make up the necessary twenty years adverse possession."

The defendant there claimed the premises were protected by a substantial inclosure and were cultivated or improved for twenty years, but it was found that " Even assuming that the defendant could succeed by showing that some one, who is not claiming title, had maintained a continuous adverse possession for twenty years," there was insufficiency of proof in that the testimony was too vague and that there should be strict proof where there was no paper title, and that a barn was not built on the disputed property.

*Ridley* v. *Walter* (153 App. Div. 65, 67) was a motion by a purchaser at a foreclosure sale to be relieved of his bid because it appeared that a third person might be in a position to assert a claim requiring litigation to determine and which could not be definitely settled in a proceeding to which such person is not a party. The objection was to the ownership of a strip of land about fifteen inches in width, which strip is covered by a plank walk which had been continuously used by the owner of adjacent property for more than twenty years, it not appearing under what claim the right of these occupants to use this strip of land arose. The premises were otherwise vacant, although it was claimed that there was a fence on the westerly side of the strip which it was claimed was the boundary of his land. After stating that it appeared clear that this could not establish a claim of title by adverse possession under the circumstances and because, in 1897, when he conveyed the adjoining premises to his wife he fixed the westerly boundary so as to exclude the disputed strip, which, it was claimed, amounted to a disclaimer, yet the court, SCOTT, J., writing the opinion, decided: Even if this claimant could not establish a claim of absolute title by adverse possession, she might give a purchaser con-

siderable trouble by asserting ownership to the disputed strip and that this would require litigation to determine which could not be decided in a proceeding to which the claimant was not a party. The court, in that case, while careful not to decide the question, says: " Her possession and use and that of her husband before her has been open, notorious and continuous apparently for much more than twenty years and has been adverse to the real owner in that the Spaeths, (the claimant and her husband) by keeping the strip fenced off, have openly asserted their right to its exclusive use."

There are other cases decided by the courts of New York which have not been referred to by the respondent, which follow the same general principle and almost every one of which affects vacant property.

In *Timmermann* v. *Cohn* (204 N. Y. 614, 617) the question arose on a motion by a purchaser at a foreclosure sale to be released from his bid, and there this court, reversing the decision below, permitted the purchaser to be relieved. There the claim of adverse possession was between a man and his wife, the wife afterwards conveying a portion of the premises to a son. HAIGHT, J., said: " It is not contended that he held adversely as to his wife, who was living with him, and it may be that he held over after the conveyance to his son, with the son's license or as his tenant, in either of which cases the adverse possession would not begin to run as against the son. It is quite possible that neither party understood or knew that the walls of the building encroached upon the lands of Mrs. Batterman, and it is true that upwards of twenty years have elapsed since the son obtained his deed, but we have no evidence here bearing upon the question other than the situation of the gore back from the street inclosed in the walls of the building and only accessible through the building itself; but the son is alive, still the record owner of the premises in controversy, and he, conceding that

20

the walls were constructed in 1875, refuses to quit-claim his interest therein. We, therefore, are of the opinion that the determination of the validity of the title is dependent upon oral testimony, that it is not free from doubt and that, under the circumstances, we should not compel the purchaser to take the title."

It is clear that where the defense is founded on adverse possession, color of title by deed or other documental semblance of right is required, but it is equally clear that neither a deed nor any equivalent instrument is necessary when the possession is indicated by actual possession and any other evidence of an adverse claim exists. The claim of such possession may continue unbroken by a succession of tenants and where this occurs the adverse possession may be just as effectual as though the premises were held during the whole period by one person. All that is necessary in order to make an adverse possession effectual for the statutory period by successive persons is that such possession be continued by an unbroken chain of privity between the adverse possessors. (Tyler on Adverse Enjoyment, p. 912; *Barnes* v. *Light*, 116 N. Y. 34; *Timmermann* v. *Cohn*, 204 N. Y. 614.)

In courts of other states a number of cases may be found which decided that, if the intent to transfer the possession of a building and land as a whole and not merely a part of it exists, the transfer may be by parol as well as by deed.

In *Wishart* v. *McKnight* (178 Mass. 356, 359) the tenant had occupied for twenty years, claiming adversely. He offered evidence to show that his predecessors in title had occupied the land to which title was in question. It was agreed that the premises had not been conveyed by description, but had been conveyed by parol. The evidence to prove this had been excluded. The Supreme Court of Massachusetts, LORING, J., said: " This evidence would have warranted the jury in finding that each of the grantees transferred to his successor the possession of

the strip of land in question, and that thereby the demandant was continuously kept out of possession."

In *Jordan* v. *Riley* (178 Mass. 524) the conveyance of the premises did not include the land in dispute, which had been previously occupied by his grantors. HOLMES, Chief Justice, said: "The demandant was disseized continuously for more than twenty years. * * * It is not material, if it be a fact, that the successive occupants of the tenant's lot claimed the disputed strip only because they were under a mistake as to where the boundary line would fall when the deeds were applied to the land."

In *Clithero* v. *Ferner* (122 Wis. 356) the occupant by adverse possession conveyed to his son, but did not include in his conveyance the disputed strip of land. It was held that the parties were privies in possession and the legal rights of the father passed to his son. The court said, as to the claim of the break in possession, page 361: "The possession of the premises from the time of the execution of the deeds in 1886 and 1887, as disclosed by the evidence, was either a continuance of the father's possession, or the father and others were in possession for respondent as owner. In either view, the possession was adverse to the true owner, and must inure to the benefit of the respondent."

In *Illinois Steel Co.* v. *Budzisz* (106 Wis. 499) a claim arose in actual, hostile occupancy without any presumption or claim or right, and it was held that such occupancy might be transferred to successive occupants orally.

The statute there was similar to ours. The court there held that there is no estate in lands until adverse possession is complete. Privity may be established in many ways, as by lease, descent, conveyance, parol or otherwise. All that the law requires is continuity of possession.

In *Viking Refrigerator & Mfg. Co.* v. *Crawford* (84 Kans. 203) it was decided that where the possession of real estate is actual, it may commence in parol and without deed or writing may be transferred from one occupant

to another by parol or bargain and sale accompanied by delivery.

*Rembert* v. *Edmondson* (99 Tenn. 15) is to the same effect.

In the instant case there was evidence of an intent to hold more than the land which the deed specifically conveyed.

The evidence of the intent to convey and hold the whole building, erected partly on the lot conveyed and partly on the premises then belonging to the plaintiff's predecessors, is clear. There was evidence that the adverse possession of the defendant Bickhardt and his predecessors of the building so far as it was erected on plaintiff's lot was clear and continuous. (*Holtzman* v. *Douglas*, 168 U. S. 278; *Jackson* v. *Moore*, 13 Johns. 513; *Jenkins* v. *Trager*, 40 Fed. Rep. 726.)

Adverse possession, although not a favored method of procuring title, is a recognized one. It is a necessary means of clearing disputed titles and the courts adopt it and enforce it, because, when adverse possession is carefully and fully proven, it is a means of settling disputed titles and this is desirable.

There are many cases where adverse possession has occurred in conveying by instrument in writing the premises adversely held, but where the possession has been open and notorious, the law applies the doctrine of adverse possession.

It is claimed by the respondent that in no event can title by adverse possession arise to that part of the premises which was originally Berrian avenue. When the lots in question were originally laid out by the holder of them, one Eden, he mapped and sold to purchasers so that each one should have lots fronting on an existing street, the fee of which was conveyed by his deeds, and when the easement in the existing street should be abandoned after Webster avenue was opened, their lots should still have frontage upon that street. That part of the

property which was originally Berrian avenue is a part of the lot of the defendant Bickhardt. It was not left unimproved. It was subjected by Riedel and by his successors to every use permitted to the then owners of the land and when Webster avenue was opened and the easement abandoned, Riedel continued to use the land to afford access to his property, besides extending his building to cover the land. That part of the premises stands in the same position as the lot which was not included in Berrian avenue. (*Bliss* v. *Johnson,* 94 N. Y. 235; *Thompson* v. *Burhans,* 79 N. Y. 93; *Driggs* v. *Phillips,* 103 N. Y. 77; *Bissell* v. *N. Y. C. R. R.,* 23 N. Y. 61; *Wager* v. *Troy Union R. R. Co.;* 25 N. Y. 526.)

The judgments of the trial court and of the Appellate Division should be reversed and there should be a new trial, with costs to abide the event.

HISCOCK, Ch. J., CHASE, CARDOZO, McLAUGHLIN and CRANE, JJ., concur; HOGAN, J., dissents.

Judgments reversed, etc.