## (May 13, 1959)

WILLIAM J. BERNAT et al., Appellants, v. ECHO SOCIETY OF NIAGARA FALLS, N. Y., INCORPORATED, Respondent.

APPEAL from a judgment of the Supreme Court in favor of defendant, entered May 22, 1958, in Niagara County, upon a dismissal of the complaint by the court at a Trial Term, at the close of plaintiffs' case.

Judgment affirmed, with costs.

HALPERN, J. (dissenting). The trial court dismissed the complaint at the close of the plaintiffs' case upon the ground that the plaintiffs had failed, as a matter of law, to establish a prima facie case. No findings of fact were made nor, indeed, could any findings properly be made since the defendant had not rested and the court had no power to pass upon any question of fact (*Kazansky* v. *Bergman,* 4 A D 2d 79). " Since the trial court did not resolve the disputed questions of fact, we must determine whether the dismissal of the complaint may be sustained as a matter of law under that view of the evidence most favorable to plaintiff" (*Scheuer* v. *Scheuer,* 308 N. Y. 447, 450). Under this rule, it seems clear to me that the dismissal cannot be upheld.

The action was brought to establish that the plaintiffs had acquired title by adverse possession to a strip of land 11 feet wide and 107 feet in depth which ran along the westerly side of the property to which the plaintiffs held record title. The plaintiffs' premises were located on the south side of Niagara Street in the City of Niagara Falls, New York. The strip of land in controversy was formerly part of an alley, 16 feet in width, which ran south from Niagara Street. The alley had been abandoned sometime prior to 1923 and a fence had been erected, running down the middle of the alley, which had the effect of dividing the alley between the abutting property owners; 5 feet lay to the west of the fence and 11 feet lay to the east of it. In 1923, the plaintiffs' predecessors in title acquired a parcel of land to the east of the disputed strip, upon which there stood a house and garage. This parcel was separated from the strip by a parcel of vacant land 19 feet in width. In 1939, they purchased the vacant land. From that time on, they cultivated all the land lying between the house and the fence, as a single unit, including the 11-foot strip. They plowed all the land, right up to the fence, and sowed grass seed and planted flowers. An outdoor fireplace was erected on the 11-foot strip, and flowers and shrubbery were planted along the fence.

The plaintiffs purchased the property in 1947. The deed conveyed to them only the property to which their predecessors had record title but the intent of the parties, so far as the trial court allowed the witnesses to state it, was that all the land in the possession of the grantors, including the 11-foot strip, should be transferred to the plaintiffs. The plaintiffs continued to cultivate the whole of the vacant land, including the 11-foot strip. They also erected a swing on the 11-foot strip for the use of their children, and they planted a hedge along the northerly edge of the strip where it adjoined the public highway and later they erected a fence along the street boundary.

The defendant owned the premises in the rear of the plaintiffs' premises, to the south. The defendant's premises were separated from the premises occupied by the plaintiffs (including the 11-foot strip) by a fence which ran along the southerly line of the plaintiffs' premises and joined, at right angles, the fence on the westerly line of the 11-foot strip, thus completing the enclosure of the plaintiffs' premises. It appears from the pleadings, although no proof was offered upon the trial with respect thereto, that the defendant obtained deeds purporting to transfer the 11-foot strip to it in 1943 and 1946. The identity of the persons who conveyed to the defendant is not disclosed; it does not appear whether the grantors ever had any title to the strip. The defendant replaced the fence separating its property from the plaintiffs' property with a new metal fence which still stands. It thus appears, not only that the plaintiffs and their predecessors were in exclusive possession of the 11-foot strip, but also that the defendant effectively barred itself from access to the 11-foot strip from its premises by its own fence. According to the proof, the defendant claimed title to the 11-foot strip for the first time in

1954, and then did nothing about it until 1956, when it repeated the claim, shortly before the commencement of this action.

It seems clear to me that, upon this proof, the trier of the facts would have the right to find, as a fact, that the plaintiffs and their predecessors in title had been in exclusive possession of the premises for more than 15 years and that the premises had been effectively enclosed and had been used by the plaintiffs and their predecessors as their own, in open and hostile possession, adverse to the claim of any other persons (Civ. Prac. Act, §§ 39, 40).

As had been stated, the trial court did not reach the determination of any question of fact. It held that the proof raised no question of fact and that, as a matter of law, the plaintiffs had failed to prove title by adverse possession. The court held that the plaintiffs' proof was deficient in two respects: (1) the plaintiffs had failed to prove that the possession had been under a claim of right; (2) the plaintiffs had failed to prove that they had the right to "tack" their possession onto that of their predecessors in possession.

A claim of right "may be made by acts alone, quite as effectively as by the most emphatic assertions" (*Barnes* v. *Light*, 116 N. Y. 34, 39). An inference that the plaintiffs and their predecessors had acted under a claim of right could certainly have been drawn by the trier of the facts from the evidence of their actual occupation and improvement of the property in the manner that "owners are accustomed to possess and improve their estate" (*La Frombois* v. *Jackson*, 8 Cow. 589, 603). There was also evidence of affirmative declarations by plaintiffs' predecessors in title, while they were in possession of the property, that all of the property, right up to the fence, was theirs.

The trial court placed great emphasis upon the fact that one of the predecessors in title had expressed doubt as to the validity of her claim of ownership. It appears that, in 1942, the mother of the plaintiffs' grantors, from whom they inherited the property, had been asked by a representative of the electric company to permit a guy wire to be placed upon the 11-foot strip and the mother had told him to go to the City Hall to check the ownership of the property and he had come back and said "As far as I am concerned, it belongs to you" and he had accepted an agreement from the mother, as owner, permitting the placing of the wire. It also appeared that, while the mother was alive, her son-in-law went to the City Assessors' office and inquired about the property and he was told that a map in the office showed a 16-foot alley which embraced the 11-foot strip. He testified that this created a doubt in his mind as to the validity of the family's claim to the property. The son-in-law never had any legal interest in the premises so his statement could not bind the plaintiffs or their predecessors in title. At any rate, neither his statement nor the statement attributed to his mother-in-law amounted to a disclaimer or disavowal of a claim to the property. At most, the statements merely indicated that they were aware of the fact that they had no record title and that their claim to the property by adverse possession could not ripen into a perfected title for some years.

In any event, any inferences which might be drawn from the expressions by the predecessors in title would, at most, constitute inferences of fact, bearing upon their state of mind during the period of their possession, which would have to be considered by the court, together with the inferences to be drawn from all the other proof in the case, in determining the question of fact as to whether the possession had been under a claim of right. The isolated statements could not properly be seized upon as a basis for a determination as a matter of law that the possession had not been under a claim of right.

All that the trier of the facts need find, in order to sustain the conclusion that the possession had been under a claim of right, is that the plaintiffs and their predecessors had occupied and used the property as their own, in hostility to the claim of any other person. The requirement of a "claim of right" that is, the requirement "that the occupation of premises be 'under a claim of title' (Civ. Prac. Act, § 39)" merely means that the occupation must be "in other words, hostile (*Belotti* v. *Bickhardt,* 228 N. Y. 296)". (*Van Valkenburgh* v. *Lutz,* 304 N. Y. 95, 99.) "The terms 'claim of right,' 'claim of title,' and 'claim of ownership,' when used in connection with adverse possession, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right" (1 Am. Jur., Adverse Possession, § 187). "The *bona fides* of the claim of the occupant is not essential" and it is immaterial "that the defendant knew all along that he was in the wrong" (*Ramapo Mfg. Co.* v. *Mapes,* 216 N. Y. 362, 370–371).

The entire subject of "claim of right" as bearing upon an acquisition of title by adverse possession has been thoroughly analyzed in a recent authoritative work (3 American Law of Property, § 15.4, pp. 771–785). As the learned authors point out, there is only "one situation in which lack of claim by a wrongdoer entering and occupying without the owner's consent ◦ ◦ ◦ [prevents] the running of the statute" and that is the case of a "disclaimer to the owner of any purpose to gain a title by adverse possession, either personally or indirectly, in so public a way as to lull him into a feeling of security, inducing him to refrain from action to protect his interest, estopping the possessor from claiming title under the statute" (p. 775).

The authors continue: "In most of the cases asserting this requirement [a claim of right or title], it means no more than that possession must be hostile, which in turn means only that the owner has not expressly consented to it by lease or license or has not been led into acquiescing in it by the denial of adverse claim on the part of the possessor" (p. 776). The rationale of the rule, simply stated, is that the acquisition of title by adverse possession and the running of the Statute of Limitations against an action of ejectment are opposite sides of the same coin. Unless there is some act or expression of disclaimer on the part of one in open and apparently hostile possession, which leads the true owner to refrain from bringing an action of ejectment, the Statute of Limitations will run against his right to bring the action and, correspondingly, title by adverse possession will accrue in favor of the possessor upon the expiration of the statutory period (p. 774).

After reviewing the New York cases, the authors state: "The later New York cases establish that 'claim of title,' which is a requirement of the statute in New York and several other states means merely such claim as will be implied from the open and continuous use and enjoyment of the property by the possessor as would be exercised by the usual owner of such property," (citing *Monnot* v. *Murphy,* 207 N. Y. 240; *Ramopo Mfg. Co.* v. *Mapes,* 216 N. Y. 362; *Belotti* v. *Bickhardt,* 228 N. Y. 296) (pp. 779–780).

And the authors conclude: "It follows inevitably that adverse possession with claim of right under the statutes is simply legal possession of the property, a question of fact for the jury on the facts of each case" (p. 780).

In the light of these principles, the plaintiffs' proof in this case was clearly sufficient to create a question of fact as to whether the plaintiffs and their predecessors had been in possession under a claim of right, within the proper meaning of that term. (See *Barnes* v. *Light,* 116 N. Y. 34, 40, *supra.*)

The remaining point upon which the trial court rested its judgment also seems to me to present a question of fact. The right of a grantee to "tack" the adverse possession by the grantor of lands contiguous to, but not included within the description of, the property transferred by deed, depends upon the intention of the grantor. If the land is all enclosed together and appears to be a single unit, an intention to transfer it all may readily be inferred (*Belotti* v. *Bickhardt*, 228 N. Y. 296, 306–308, *supra*; *Lewis* v. *Idones*, 280 App. Div. 980; see cases collected in Annotation 17 A. L. R. 2d 1128, 1131, 1162, 1168). "By weight of authority * * * the two possessions will be tacked if it appears that the adverse possessor actually turned over possession of that part as well as of that portion of the land expressly included in his deed." (3 American Law Of Property, § 15.10, p. 814; see, also, 1 Am. Jur., Adverse Possession, §§ 157–158.)

The proof in this case clearly showed that it was the intention of the plaintiffs' grantors to transfer their interest in the 11-foot strip at the time that they deeded to the plaintiffs the adjoining property to which they held record title. In addition, the plaintiffs offered to prove statements by the grantors at the time of the conveyance to the effect that the property included the land up to the fence, as bearing upon the intention of the grantors, but the court erroneously excluded this proof. The proof will, of course, be available upon a new trial. It will afford additional support for the conclusion that the plaintiffs acquired all the possessory rights of their predecessors in title and that they are entitled to tack the period of their predecessors' possession to the period of their own possession.

I would therefore reverse the judgment appealed from and order a new trial.

Present — Kimball, J. P., Williams, Bastow, Goldman and Halpern, JJ. All concur, except Halpern, J., who dissents and votes for reversal and for granting a new trial, in an opinion.

Judgment affirmed, with costs.