■ YEPREM NAZARIAN, Appellant, v MARY PASCALE, Respondent. [638 NYS2d 661]

Defendant's deceased husband owned two adjacent parcels of property in Manhattan—at 720 Second Avenue (through a wholly owned corporation, M. Delia, Inc.), and 304 East 39th Street. The ground floor of the former parcel was occupied by Homestead Restaurant, Inc., which was also owned by the decedent. In 1978 the decedent built an addition on the rear of the restaurant, housing restrooms and part of the kitchen; the addition partially intruded on his neighboring lot. Standing on the Second Avenue premises were a water tower and air conditioning compressors, which serviced the 39th Street parcel.

On August 1, 1979, Homestead sold its leasehold to the cur-

rent tenant, 720 Second Avenue Restaurant and Bar, Inc., and on September 28, M. Delia, Inc. sold the lot and the building housing the restaurant to plaintiff. Six years later, in 1985, the decedent's attorney notified plaintiff that the kitchen/restroom extension was not part of the latter's building, and that he should cease and desist from using that space and build a wall to demarcate the correct limits of the property. No action was taken for another six years, during which time defendant succeeded to the interests of her late husband. In 1991, after plaintiff inquired of defendant with regard to removal of the water tower, the same attorney sent plaintiff a copy of the deed, demanding immediate return of the encroaching property on which plaintiff was "trespassing". The record indicates no action by defendant to eject plaintiff from the encroaching property. Instead, plaintiff commenced the instant action in December 1993, demanding in his first cause of action the settlement of his adverse possessory claim to the property in question. (The second cause of action had to do with removal of the water tower.) Plaintiff thereupon moved for summary judgment on the first cause of action. Finding that plaintiff had not adversely possessed the premises for ten years prior to commencement of the action, the IAS Court not only denied plaintiff's motion but granted defendant summary dismissal of the first cause of action.

Effective adverse possession requires the establishment of five essential elements: possession must be hostile and under claim of right, it must be actual, it must be open and notorious, it must be exclusive, and it must be continuous (*Belotti v Bickhardt*, 228 NY 296). The last four elements are undeniable; defendant challenges only the first, arguing that plaintiff's possession did not ripen into a hostile claim until defendant formally pointed out the encroachment in 1985.

An action to recover (or, more properly in this case, to establish one's right to) real property based upon possession cannot be commenced "unless the plaintiff, or his predecessor in interest, was seized or possessed of the premises within ten years before the commencement of the action." (CPLR 212 [a].) This limitation must be read in conjunction with RPAPL 311 (*see*, 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 212.01), which requires the premises to have been "held and possessed adversely to the legal title for ten years before the commencement of the action." Defendant's assertion that the element of "hostile" possession did not arise until 1985, thus rendering the 1993 commencement of this action premature, is not borne out in the record.

The element of hostile possession does not require a showing of enmity or specific acts of hostility (*Sinicropi v Town of Indian Lake*, 148 AD2d 799, 800); rather, it can be inferred simply from the existence of the other four elements, thus shifting the burden to the record owner to produce evidence rebutting the presumption of adversity (*City of Tonawanda v Ellicott Cr. Homeowners Assn.*, 86 AD2d 118, 121). But here, there was even more. It was defendant's predecessor who had constructed the encroachment in 1978, clearly for the exclusive use of the occupant of 720 Second Avenue. Under such circumstances, his lawyer's letter in 1985 cannot be viewed as a *sudden awakening* to the fact of adverse possession by the owner of the adjacent parcel he had sold six years earlier, but rather as a *confirmation* of that fact. In other words, the letter of August 9, 1985 merely confirmed that the clock on adverse possession of this "substantial[ly enclosed]" portion of realty (RPAPL 522 [2]) had been ticking for the past six years. Defendant's predecessor (and defendant herself) never did commence an action to eject plaintiff from the encroaching property before passage of a decade of adverse possession. Instead, fully 14 years passed before defendant took legal action to assert her right to recovery, and even then, only in the form of a denial of plaintiff's ripened claim to adverse possession.

Defendant suggests that plaintiff held the encroaching property for use under a license from the grantor of the 1979 sale, which would deprive the occupant of any later claim to adverse possession. But there is no evidence of any such license. Indeed, the only license referred to in the contract of sale was for the *grantor's* use of the water tower located on the *grantee's* property.

We are not free to speculate as to the mental state of the adverse possessor with regard to his intended use of this encroaching property, vis-à-vis the true owner's rights. To the contrary, our courts have historically applied an objective test of focusing simply on the adverse possessor's use of the property as his own, notwithstanding the true owner's negligent forbearance in bringing action to assert his rights (*Ramapo Mfg. Co. v Mapes*, 216 NY 362, 370-371). Concur—Sullivan, J. P., Wallach, Ross and Williams JJ.