EDWIN B. MOORE, Appellant, *v.* UNITED STATES CREMATION COMPANY, LTD., Respondent.

Argued May 25, 1937; decided July 13, 1937.

*Frederick C. Dowd* for appellant. The Legislature has recognized the burial of cremated remains as a cemetery purpose. (Cons. Laws, ch. 35, art. 9, § 70.) There is no implied repeal of laws requiring consent to acquire land under the provisions of subdivision 5 of section 76 of the Membership Corporations Law for a crematory and columbarium. (Cons. Laws, ch. 50, § 451; *Matter of Cram*, 69 N. Y. 452; *Czarnowsky* v. *City of Rochester*, 55 App. Div. 388.) The business of the defendant at the place acquired is forbidden by law. (*Reg.* v. *Price*, 12 Q. B. Div. 247; Cons. Laws, ch. 35, § 70; *Abbey Land Co.* v. *San Mateo County*, 167 Cal. 434.)

*David Holman* and *Jacob J. Pincus* for respondent. The appellant failed to prove facts sufficient to constitute a cause of action. (*James* v. *Alderton Dock Works*, 256 N. Y. 298; *Westchester Mortgage Co.* v. *Grand Rapids & I. R. R. Co.*, 246 N. Y. 194; *Neubeck* v. *McDonald*, 128 Misc. Rep. 768; *Trustees of Columbia University* v.

*Kalvin*, 226 App. Div. 775; *Loesch* v. *Manhattan Life Ins. Co.*, 128 Misc. Rep. 232.) The Legislature did not intend to include crematories in sections 73 and 78 of the Membership Corporations Law. (*Moritz* v. *United Brethren Church*, 269 N. Y. 125; *Wojtkowiak* v. *Evangelical Lutheran St. John's Church*, 236 App. Div. 411; 261 N. Y. 656; *Sharkey* v. *Thurston*, 268 N. Y. 123; *Burke* v. *New York University*, 196 App. Div. 491.)

CRANE, Ch. J. The following statements of fact were found by the trial court: The defendant United States Cremation Company, Ltd., is a domestic stock corporation organized in 1884 under the General Business Law (Cons. Laws, ch. 20). Among the powers granted by its certificate of incorporation is the right to cremate dead human bodies and to conduct a crematory and columbarium. The defendant has operated a crematory at Fresh Pond in Queens county since 1884. It now is in the process of establishing and erecting a crematory in Nassau county. It is the owner of approximately twenty-seven acres of land located in Central Park (now called Bethpage), town of Oyster Bay, Nassau county. Edwin C. Moore is the owner of approximately forty-five acres of land which adjoins that of the defendant on the west. The land of both parties fronts on the south side of the Hempstead-Farmingdale turnpike, which leads to Pinelawn Cemetery, about three miles east. This land of the defendant is located in the district defined by the zoning ordinance of the town of Oyster Bay as a Business H District, and was so placed in a resolution of the town board of the town of Oyster Bay on May 28, 1934, after due notice and hearing. Among the uses permitted in Business H District is that of a crematory and mortuary. On June 6, 1934, a permit was issued by the duly authorized official of the town of Oyster Bay, to wit, the building inspector, to erect and operate a crematory; and immediately thereafter the defendant entered into a contract for the erection and

completion of its crematory except for the retorts. Work was commenced the same day the permit was issued.

On the 17th day of August, 1934, one Michael J. Leonard, a resident taxpayer of the town of Oyster Bay, instituted a mandamus suit in the Supreme Court to compel the town board to revoke the building permit and to compel the said town board to set aside the resolution which placed the land in a Business H District. The application for the mandamus was denied all the way through to the Court of Appeals. This suit related solely to the zoning resolution, no point being raised as to the State statute prohibiting the erection of crematories.

On June 6, 1935, one year after the issuance of the building permit, and after the defendant had completed the entire foundation work of the crematory and columbarium, this action was commenced by the adjoining landowner for a declaratory judgment setting forth the rights of the respective parties, and to have it declared that, pursuant to section 78 of the Membership Corporations Law (Cons. Laws, ch. 35), the defendant has no right to erect or maintain a crematory.

Further facts regarding the nature of this building which the defendant is erecting may be stated as follows: The defendant intends to carry on a crematory and columbarium in said building, now under construction, when it is completed; that the entire cost will be about $200,000, exclusive of the cost of land. The building is about 400 feet from the building line of the street, 250 feet from the plaintiff's property and 550 feet from the building located on the plaintiff's property; it will be Gothic type of architecture, constructed of stone granite, rock and faced granite, with the interior of the said building finished in quartered Italian travertine stone. The premises, according to plan, will have a park-like appearance, surrounded by shrubbery and trees. The building will dispose of the dead bodies by cremation only, which consists of placing the dead body in a chamber of the retort, where it is then lowered into a secondary chamber which reaches a temperature of

2,000 degrees Fahrenheit, where the body is completely reduced to bone ash. The average length of time necessary completely to cremate a dead body is one and one-half hours. After cremation the remains of a human body become bone ash, an entirely inorganic substance, consisting chiefly of calcium phosphate. The remains are entirely harmless, even though the person had suffered and died from a contagious disease. By cremation the breakdown of the body is accomplished by rapid chemical changes of gases which are formed and are combined with oxygen. The non-gaseous part of the body while being consumed is also rapidly combined with oxygen. The average length of time for complete decomposition of a dead body by burial in the earth, mausoleum or similar means of disposition is several years, dependent upon temperature, embalming and similar conditions. A crematory operates without emitting smoke, odor or any form of harmful gases. The court refused to find that a crematory is not dangerous to the public health or welfare of a community.

Continuing, the court stated the further facts to be: That after cremation the remains are either placed in a columbarium of the crematory or taken to the home of the relatives of the deceased and kept there or scattered to the winds or buried in a cemetery or kept in undertaking establishments for further orders of the family. After cremation the remains will sometimes be kept in urns in various wall niches in the part of defendant's building called the columbarium.

The judge at Special Term, in deciding in favor of the plaintiff and against the defendant, stated that the defendant knew from the mandamus proceeding that its right to erect the building was challenged, and that, while the present action was pending, and as early as September 23, 1935, the defendant started building a columbarium on its said lands for the purpose of providing receptacles for the remains of the bodies cremated, and found as a conclusion of law that the right of the

defendant to acquire lands whereon to construct and operate a crematory or columbarium is governed by the same provisions of law relating to the burial of the dead as is defined in sections 70, 76 and 78 of article IX of the Membership Corporations Law, and by section 451 of the Real Property Law (Cons. Laws, ch. 50) relating to the acquisition of lands for cemetery purposes; he concluded that the proposed use by the defendant was unlawful.

The Appellate Division reversed the trial judge in his finding that the defendant's land was acquired for a cemetery purpose, and granted judgment for the defendant, dismissing the complaint, and found that the crematory was not dangerous to public health and the welfare of the community.

The decision of this case turns upon whether the lands of the defendant are to be used for a cemetery purpose within the provisions of the law above stated. Turning to the evidence we find that the land is to be dedicated as an attractive final resting place for the remains of persons cremated. The secretary and general manager of the defendant stated that the business of running the crematory also consists in selling niches in the building itself and urns in which to place the ashes. The price of niches varies from $35 to $2,000 or $2,500, and the urns run from $15 up to $1,500.

Article IX of the Membership Corporations Law relates to cemetery associations. The term " cemetery corporation " (§ 70) is defined to be " any corporation organized under a general law for the burial of the dead in a grave, mausoleum, vault or other receptacle but does not include a family cemetery corporation or a private cemetery corporation."

Section 76 says that a cemetery corporation may acquire additional real or personal property for the purpose of: " 5. The construction and operation of a crematory and columbarium therein."

Section 78 we quote in full: " It shall not be lawful for any corporation, association or person hereafter to set aside or use for cemetery purposes any lands in any county within the state erected on and after January first, eighteen hundred and ninety, adjoining a city of the first class and having a population of between eighty thousand and eighty-five thousand according to the Federal census of nineteen hundred and ten; but nothing herein contained shall prevent cemetery corporations formed prior to January first, nineteen hundred and seventeen, which own in such county a cemetery in which burials have been made prior to such date, from setting apart and using for burial purposes lands lying contiguous or adjacent to such cemetery which lands have been heretofore acquired by a recorded deed of conveyance made to such a cemetery corporation either for burial purposes, or for the purposes of the convenient transaction of its general business, which lands shall have been acquired with the consent of the board of supervisors; nor to prohibit the dedication or use of land within such county for a family cemetery as provided in section one hundred and five of this chapter." This section is practically the same as former section 85, entitled " Cemeteries in Nassau County," as amended by chapter 614 of the Laws of 1919. Counsel conceded upon the trial that this provision of section 78 related to Nassau county.

When we consider that a cemetery corporation means any corporation organized for the burial of the dead in a vault or a receptacle; that a present existing cemetery corporation may acquire property for the construction and operation of a crematory and a columbarium therein; and that Nassau county has received special attention from the Legislature by enactment which provides that no association may use for " cemetery purposes " any lands within said county, we agree with the Special Term that a crematory and a columbarium for the disposal and burial of the dead is included within these prohibitions. We are here dealing with the acts of the

Legislature. What did these acts include? The cemetery referred to in section 70 means a place for the burial of the dead, not necessarily a grave in the ground or in a mausoleum or a vault, but in any other receptacle. Nothing is said about the preservation of the entire body for burial in the same form or in the same nature as existed on the day of death, but the remains of the dead person in any form which are preserved in a receptacle are included within this term " cemetery " as applied to corporations engaged in such business.

Section 78, referring specifically to Nassau county, does not limit the use of land merely for a cemetery, but says any land which is set aside or used for cemetery purposes. This, we think, is broad enough, and is intended to be broad enough, to cover any disposal of or preservation of the remains of dead people, whether they are to be in the ground or reduced to ashes and put in niches or urns in a columbarium. The fact is, and we must face facts, that the ordinary cemetery keeps the body for a while until it is decomposed in a coffin in the ground; the crematory or columbarium decomposes it at once and keeps the remains in an urn. The purpose of the burial in the ground and of the preservation in the urn is to dispose finally of that which remains after life or spirit has departed.

In the Real Property Law, section 451, we also find restrictions upon the use of property: " It shall not be lawful for any person to take by deed, devise or otherwise or set apart or use any land or ground in any of the counties of Westchester, Kings, Queens, Richmond, Rockland, Suffolk, Putnam or Nassau for cemetery purposes without the consent of the board of supervisors for such county, * * * and said board of supervisors * * * in granting such consent may annex thereto such conditions, regulations and restrictions as such board may deem the public health or the public good require."

We note again the use of the words " cemetery purposes " not merely the word " cemetery." The purpose

of a cemetery is to dispose of the dead body; such also is the purpose of the crematory. As the purposes are one and the same we find no reason for narrowing these acts of the Legislature, which must have a definite purpose in restrictions made applicable only to those counties within or adjoining the vast population of the city of New York. In fact, burial and cremation are joined together as being the same thing for the purposes of the statutes in sections 2211 and 2215 of the Penal Law and section 381 of the Public Health Law (Cons. Laws, ch. 45).

None of these questions were raised or passed upon in *Matter of Leonard* v. *Tappen* (244 App. Div. 817; affd., 269 N. Y. 567). That case dealt solely with the power to change or modify or adopt the zoning regulation.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. (See 275 N. Y. 544.)

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.