ANNA L. SCHOENFELD et al., Plaintiffs, *v.* EVA CHAPMAN et al., Defendants.

Supreme Court, Special Term, Suffolk County, December 28, 1950.

*Lincoln Schmidt* for plaintiffs.

*Bryan Brady* for defendants.

COLDEN, J. This is an action instituted under the provisions of section 539 of the Real Property Law. Its purpose is to compel the removal of nine cottages maintained by the defendants or some of them on a parcel of beach land at Fire Island, New York, and to recover resulting damages. The defendants or their predecessors erected these dwellings apparently in the belief that the lands were of public or unknown ownership which they were free to enter upon and appropriate. Section 539 provides as follows: " § 539. *Action for the removal of encroaching structures.*

" 1. An action may be maintained by the owner of any legal estate in land for an injunction directing the removal of a structure encroaching on such land.

" Nothing herein contained shall be construed as limiting the power of the court in such an action to award damages in an appropriate case in lieu of an injunction or to render such other judgment as the facts may justify.

" 2. This section shall not be deemed to repeal or modify any existing statute or local law relating to encroaching structures."

The plaintiffs assert title to the real property on which the small dwellings are located. All defendants have interposed a defense of laches on the plaintiffs' part sufficient to bar a recovery in favor of the latter. Certain of the defendants assert title by adverse possession to the particular bounds on which their structures rest. These are the three principal issues which the court is required to resolve.

Logically the first point of consideration is the strength of the plaintiffs' record title, for if this fails, the complaint falls with it. The court has carefully examined the documentary evidence and exhibits and has considered the testimony offered, particularly that of the surveyor, Nathaniel Norton. The plaintiffs' chain of record title which commences with the deed from William Phillips to Smith Rider, dated October 4, 1832, recorded November 30, 1852, is held to be valid and subsisting.

The differences in description between that deed and the deed from Smith Rider *et ux.* to James Petty have been satisfactorily reconciled.

The defendants' chief contention in this respect, that the plaintiffs' title originating in the deed from William Phillips concerns only meadow or the right of meadow, is without substance or materiality. The description in plaintiffs' exhibit 4 refers to " one equal half of a right of meadow " but this should be interpreted as though the word " right " read "piece or parcel ", and as though such word were capitalized. Indeed, later in the same description, it is referred to " as Ward's Right ", i.e., the lot drawn by Freeholder Ward.

It appears that in 1774, at the direction of the trustees of the township of Brookhaven, South Beach (the large tract of land referred to as meadow at Fire Island which includes the property here involved) was divided into fifty-five parts not equal in size but according to quality. It was first directed that so much of the meadow be sold as would pay the expenses of such survey and division. Lot 37 was thereupon drawn by and assigned to Thomas Ward and the deed, from which the plaintiffs' title emanates, is concerned with the west half of such right. It is readily to be observed, therefore, that the mesne conveyances were concerned with fee title and not merely with easements or grazing rights.

The alleged laches on the plaintiffs' part next engages the attention of the court. The question of laches as a defense where the Statute of Limitations has not run is a difficult and troublesome one.

" We have held it to be a matter of serious doubt whether the equitable doctrine of laches, as distinct from the Statute of Limitations, now exists in this state." (*Treadwell* v. *Clark,* 190 N. Y. 51, 60; *Cox* v. *Stokes,* 156 N. Y. 491, 511; *Schreier* v. *Cummings,* 250 App. Div. 808.) Particularly is this so where a plaintiff seeks in equity the enforcement of a legal right. (*Pollitz* v. *Wabash R. R. Co.* 207 N. Y. 113, 131.)

" Where there is discretion to bar a right on the ground of delay the Statute of Limitations will be used as a guide in the exercise of such discretion." (*Bliss* v. *Omnibus Corp.,* 169 Misc. 662, 664-665.)

If laches be a defense, the defendants must show that extraordinary circumstances exist that require the application of the doctrine where there is no bar by limitation. (*Collins* v. *Burr,* 209 App. Div. 116.)

It must be shown that a plaintiff was unconscionably dilatory in enforcing his rights and that as a result the position of the defendants has been altered to their substantial prejudice.

(*Wakefield* v. *Board of Educ.*, 192 Misc. 639; *Marcus* v. *Village of Mamaroneck*, 283 N. Y. 325, 331.)

The parties have submitted no case in this jurisdiction where laches has been upheld as a defense to a person in adverse possession of real property where the period of limitations has not fully run. The court's own research has failed to disclose such authority in the State of New York, though in the State of Texas the defense of laches has been held not to apply in this situation. (*Higgins Oil & Fuel Co.* v. *Snow*, 113 F. 433.)

In title by adverse possession, the possession must be an open, notorious, asserted right for the statutory period of fifteen years. If the defendants' possession does not ripen into a legal estate for that period, it is difficult to see how the plaintiffs can be deprived of a full right of the recovery of the premises by any defense of laches and such would include the right to have structures erected by the defendants removed.

It is the fact of a defendant's being exposed to such a suit for the statutory period and the neglect of the opposite party to bring suit thereon which causes the presumption of a grant in favor of long possession and enjoyment. Title by adverse possession arises from a conclusively presumed grant. (*Powlowski* v. *Mohawk Golf Club*, 204 App. Div. 200; *Burbank* v. *Fay*, 65 N. Y. 57, 65, 66.)

" The doctrine of laches does not apply where defendant has acted in known and open hostility to plaintiffs' rights and has been misled by no apparent acquiescence on plaintiffs' part." (*Moore* v. *United States Cremation Co.*, 158 Misc. 621, 626, affd. 275 N. Y. 105.)

The court concludes that the defendants have failed to demonstrate that the plaintiffs even had knowledge of the presence of the defendants or their cottages on these not too accessible beach lands. In addition the defendants have offered no proof of prejudice resulting from the plaintiffs' earlier failure to act. Indeed, the situation would seem quite reverse inasmuch as the delay on the part of the plaintiffs and their predecessors seems to have permitted the defendants the additional enjoyment and use of their beach cottages.

Applying the tests of the foregoing authorities, the defense of laches must be overruled.

The court passes to the issues arising out of the defense of adverse possession. These concern only the defendants Robert Wood (house No. 4), Norman King (house No. 5), Alfred Noble Chapman and Eva Chapman (house No. 6) and Anna Kellers (house No. 9).

Section 34 of the Civil Practice Act directs that an action to recover real property or the possession thereof cannot be maintained unless the plaintiff was seized or possessed of the premises within fifteen years before the commencement of the action.

Section 35 creates a presumption of possession in favor of the legal title. Section 39 restricts the assertion of adverse possession to the premises actually occupied and section 40 prescribes the essential of adverse possession under a claim of title not written as follows: "For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases and no others: 1. Where it has been protected by a substantial inclosure. 2. Where it has been usually cultivated or improved."

"Adverse possession, even when held by a mistake or through inadvertence, may ripen into a prescriptive right after twenty years of such possession (*Crary* v. *Goodman,* 22 N. Y. 170; *Barnes* v. *Light,* 116 N. Y. 34; *Baker* v. *Oakwood,* 123 N. Y. 16; Washburn Real Prop. [6th ed.], sec. 1968, p. 130), the actual physical occupation and improvement being, in a proper case, sufficient evidence of the intention to hold adversely. (*Barnes* v. *Light,* 116 N. Y. 34.)

"There are five essential elements necessary to constitute an effective adverse possession; *first,* the possession must be hostile *and under claim of right; second,* it must be actual; *third,* it must be open and notorious; *fourth,* it must be exclusive; and *fifth,* it must be continuous. If any of these constituents is wanting, the possession will not effect a bar of the legal title. (*Doherty* v. *Matsell,* 119 N. Y. 646; Am. & Eng. Ency. of Law [2d ed.], p. 795)." (*Belotti* v. *Bickhardt,* 228 N. Y. 296, 302.)

The last four elements as set forth in the foregoing quotation clearly exist in the case of the defendants Chapman, Robert Wood and Anna Kellers. The possession of the defendant, Norman King, has not been continuous as will be hereinafter set forth. The plaintiffs, however, challenge the existence of element 1 in this case on the part of these defendants, to wit, that their possession has been hostile or under claim of right. But it will be considered so held even where the possession is by mistake or inadvertent, where the property has been built upon or improved.

"We are of the opinion that even where the possession by A of the land of B is by mistake or through inadvertence, if A has possessed, used and improved the land as owners are accus-

tomed to do (*Crary* v. *Goodman,* 22 N. Y. 170; *Barnes* v. *Light,* 116 id. 34; *Monnot* v. *Murphy,* 207 id. 240), or has, by the erection of a building, possessed it by actual visible physical occupation (*Belotti* v. *Bickhardt,* 228 N. Y. 296; *Quaratielli* v. *Sileo,* 188 App. Div. 998, affd. 232 N. Y. 529; *Eggler* v. *New York Central R. R. Co.,* 207 App. Div. 120), such possession without anything more, may be said to have been hostile and under claim of right. B is charged with notice by the visible physical fact alone." (*Smith* v. *Egan,* 225 App. Div. 586–587.)

The possessions of the defendants now under discussion are held to be adverse and under claim of right even though the defendants believed they were upon open public lands belonging to no private person.

" A naked possession of land unaccompanied by a claim of right never constitutes a bar to the true owner, but in the absence of a statutory requirement the *bona fides* of the claim of the occupant is not essential and it will not excuse the negligence of the owner in forbearing to bring his action until after the time in the Statute of Limitations shall have run against him to show that the defendant knew all along that he was in the wrong. (*Humbert* v. *Rector, etc., of Trinity Church,* 24 Wend. 587.) " (*Ramapo Mfg. Co.* v. *Mapes,* 216 N. Y. 362, 370–371.)

" If one without consent, either direct or indirect, projects his building over upon his neighbor's lot, under color of title, *however dim,* it is necessarily a hostile entry, as the act speaks for itself and is a public proclamation of hostility to the title of the real owner." (*Hindley* v. *Manhattan Ry. Co.,* 185 N. Y. 335, 355–356; italics supplied.)

" A claim of title may be made by acts alone, quite as effectively as by the most emphatic assertions. As was said by the chancellor, when speaking for the Court of Errors in *La Frombois* v. *Smith* (8 Cow. 589, 603): ' The actual possession and improvement of the premises, as owners are accustomed to possess and improve their estates, without any payment of rent, or recognition of title in another, or disavowal of title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner, and unless rebutted by other evidence, will establish the fact of a claim of title.' Possession, accompanied by the usual acts of ownership, is presumed to be adverse until shown to be subservient to the title of another." (*Barnes* v. *Light,* 116 N. Y. 34, 39–40.)

Most of the defendants' evidence was furnished by the defendant, Alfred Noble Chapman. The plaintiffs' memorandum with commendable frankness conceded his veracity, a conclusion with which the court heartily agrees, and further sets forth that Mr. Chapman's statements of ownership of cottages and dates of construction and transfer are left uncontradicted.

He testified with respect to cottage No. 4, that of the defendant Robert Wood, that the same was built in April, 1932, by one Frank Leek who occupied the same continuously with his wife until 1946, at which time it was sold to the defendant Robert Wood, who has occupied it continuously thereafter.

Concerning house No. 5, that of the defendant Norman King, Mr. Chapman testified that the same was owned in 1934 by one Loretta Sweezy, who, on August 11, 1934, transferred the same to Mr. King. Further, that Mrs. Sweezy and various other owners had been in possession for many years before that. However, he further testified that in 1938, dwelling No. 5 was removed from its original location by the September hurricane and came to rest approximately seventy-five feet away. It was never restored to its original location. Hence, the evidence as to this house does not satisfy the requirements of section 39 of the Civil Practice Act which restrict the adverse possession to the premises actually occupied. The present premises of the defendant, Norman King, have actually been occupied only since September, 1938, which is less than the statutory period of fifteen years.

As to his own house, No. 6, the defendant Chapman testified that the same was built by him in 1932 and has been continuously occupied and possessed by himself and his wife since that time. Regarding house No. 9, the dwelling of the defendant Anna Kellers, the testimony of Mr. Chapman was to the effect that same had been in existence for more than thirty years. At one time it had been occupied by a certain Edward Rogers, who, in 1933, sold it to the defendant Anna Kellers. She and her family have lived there since that time.

The plaintiffs seek to draw favorable inferences from the circumstances that the defendants or some of them, for a number of years, paid town taxes to the Town of Brookhaven on their homes which were described on the tax bills as " house on land of O. L. Schwencke." It is sought to have the court conclude that these defendants were not asserting any title in themselves but admitting title in another. This is a distinct *non sequitur*. Tax offices are notoriously inaccurate and far behind recording offices in reflecting changes of ownership.

Owners of property are interested in having their taxes paid. They are not particularly concerned with the designation of ownership stated on any tax bills. As long as the bills are paid and the tax liens discharged, most owners consider the wordings of these bills immaterial. The court does not consider the payment of such a bill to be in any sense an admission against interest.

Applying the legal authorities herein set forth to the factual background, the court sustains the defense of adverse possession as to the defendants, Robert Wood, Eva and Alfred Noble Chapman and Anna Kellers, and overrules the defense as to the defendant Norman King.

The court has been informed of the death of defendant George Ackerly (house No. 7) prior to the trial. No application was made to substitute his executor or administrator as party defendant. The judgment to be entered in this suit, therefore, will not affect said defendant or his interest in the subject matter thereof. (See Civ. Prac. Act, §§ 85, 86.)

It was stipulated in open court that the plaintiffs would be entitled to judgment in the amount of $10 against each unsuccessful defendant by reason of tax overpayments due to the improvements maintained on this property. The further claim for damages for use and occupation of the plaintiffs' real estate is rejected for lack of proof. No proof was elicited in this respect other than Mr. Chapman's testimony that he sometimes rented his house for $20 per week. Standing by itself, this statement is without probative force.

Judgment ordering the removal of their respective structures and for damages in the sum of $10 is directed as against the defendants, Edward Kellers, Norman King, Walter Riedenbach, Charles Wood and George Wittler. The complaint is dismissed as to the defendants, Eva Chapman, Alfred Noble Chapman, Robert Wood and Anna Kellers. No costs will be allowed to any party.

The foregoing constitutes the decision of the court. Settle judgment on notice.